## IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION

| | | |
|---|---|---|
| John Does 1 & John Doe 2, on behalf of themselves and others similarly situated, | § § § § | |
| **Plaintiffs** | § § | |
| v. | § § | Civil Action No. 21-cv-3036 |
| Harris County, Texas; Lina Hidalgo, Rodney Ellis, Adrian Garcia, R. Jack Cagle, Tom S. Ramsey, in their individual and or Official capacities as members of the Harris County Commissioners Court; and Edward Gonzalez, in his official capacity as Sheriff of Harris County Texas | § § § § § § § § | |
| **Defendants** | § § | **Jury Trial Demanded** |

## FIRST AMENDED COMPLAINT
## FOR DECLARATORY AND INJUNCTIVE RELIEF

## I.     INTRODUCTION

1.   This is a civil rights case involving the Defendants acting individually and or in their official capacities under color of state law. Plaintiffs seek declaratory and or injunctive relief under 41 U.S.C. 1983 for violations of their Fourteenth Amendment rights under the United States Constitution. Plaintiffs assert the work atmosphere created by Defendants is overly dangerous and that their due process rights and equal protection rights are being violated and a cause of action also exists under 42 U.S.C. § 1983 regarding a State Created Danger Exception warranting the Court to issue injunctive relief and or to declare the rights and duties of the parties to this action.

## II.     JURISDICTION AND VENUE

2.   Jurisdiction is invoked pursuant to 42 U.S.C. § 1983, as well as 28 U.S.C. § 1331, § 1343, and § 1367 as one or more of the claims arise under the U.S. Constitution, laws, or treaties of the United States. The Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

3.   Supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367 as the state law claims are so related to the claims within which this Honorable Court has original jurisdiction "that they form part of the same case or controversy under Article III of the United States Constitution."

4.   Venue is conferred under 28 U.S.C. § 1391 (b) as a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of Texas.

## III.   PARTIES

5.   Plaintiffs John Does and or Jane Does ("Plaintiffs") were and or are employed as Detention officers, and or Deputies, and or administrative staff, at various Harris County Jail facilities. Plaintiffs were, and or are still, employed at various Harris County Jail facilities since September 20, 2019, to present.

6.   Plaintiffs are citizens of the United States and residents of Harris County, Texas at all times relevant and or the causes of action arose and or the site of events are located in Southern District of Texas, Houston Division.

7.   Upon information and belief, Defendant Harris County Commissioners Court is the sole department within the Harris County government responsible for budgeting county tax dollars and overseeing expenditures. Harris County Commissioners Court's principal place of business is in Harris County, Texas.

8. The Harris County Commissioners Court is composed of 5 individuals: Defendant Lina Hidalgo, County Judge; Defendant, Rodney Ellis, County Commissioner; Defendant Adrian Garcia, County Commissioner; Defendant R. Jack Cagle, County Commissioner; and Defendant Tom S. Ramsey, County Commissioner. Defendant Edward Gonzalez is Sheriff of Harris County, Texas. Harris County is the political subdivision.

9. During all relevant periods pursuant to the injuries suffered by Plaintiffs, the above County Commissioners were members of the Harris County Commissioners Court and or the Sheriff and all have had previously acknowledged their awareness of the lack of manpower and increasing treacherous conditions existing at the Harris County Jail facilities some Defendants since at least 2019 and at various times thereafter up until the filing of this action. Defendants have intentionally refused and or failed to initiate/implement any mandatory budget allocations to prevent the on-going deterioration of jail conditions.

10. Defendant Gonzales, as the elected sheriff of Harris County, is responsible for providing regular, accurate information to the Commissioners Court regarding jail conditions as well as mandatory staffing requirements required by the State of Texas regarding staffing levels to properly care for prisoners held at the county jail facilities.

IV. <u>STATEMENT OF FACTS AND FACTUAL INFERENCES</u>

11. During all relevant periods pursuant to the claims of the Plaintiffs, the above-named members of the Harris County Commissioner's Court (hereinafter "Commissioner's Court"). County Judge Hidalgo and or the various County Commissioners have previously acknowledged and or been fully informed regarding the increasing treacherous conditions

for both employees of the Harris County Jail facilities since September 2019 and various times thereafter due to intentional underfunding.

12. Defendants, individually and or collectively, are responsible for the ultimate oversight and operational standards of the Harris County Jail Facilities and for compliance with the directives promulgated by the Texas Commission on Jail Standards ("TCJS"). Tex. Loc Gov't Code §§351.001- 351.002; Tex. Gov't Code §511.009.

13. At all times described herein, Defendants acting individually and or collectively were acting under color of law.

14. The Harris County Jail Facilities, include the following jail facilities known as 701 San Jacinto Jail ("701" or "701 jail"); the 1200 Baker Street Jail ("1200" or "1200 jail"), and the Joint Processing Center ("JPC") and are referred to collectively as the "the jail," "Harris County Jail" and or "jail facilities".

15. Defendants, individually and or collectively, have mandatory ministerial duties regarding the funding, staffing, and regulatory compliance requirements for the Harris County Jail facilities for the protection of prisoners and or employees, such as Plaintiffs, assigned to jail operations within the jail facilities.

16. Plaintiffs are an identifiable limited group of specific employees with specialized training and or duties that are assigned at the Harris County Jail. Plaintiffs are recruited and trained to manage and supervise prisoners housed at the Harris County Jail. The Plaintiffs' duties and responsibilities are based upon a minimum number of such specific employees to oversee and or protect the prisoners housed at jail facilities.

17. The Texas Commission on Jail Standards ("TCJS") sets the minimum mandatory jail standards that must be followed by each county jail in the State of Texas. Tex. Loc. Gov't Code §351.002 for the protection of both employees and prisoners.

18. Defendants know and have reason to know such standards create minimum affirmative ministerial duties Defendants are required to follow under the laws of the State of Texas.

19. TCJS has established minimum standards for the care, custody, and control of inmates and for the protection of jail employees within county run facilities such as the Harris County Jail. *See* Tex. Admin. Code §251.1.

20. Defendants know the staffing standards and have intentionally attempted to avoid compliance with state mandated minimum staffing standards by intentionally fabricating a "declaration of an emergency" signed by Defendant Gonzalez each year.

21. Defendants intentionally refused to correct jail staffing deficiencies by use and abuse of this "declaration of emergency" to avoid proper funding levels so that other discretionary "pet" projects and or payment of other non-emergency expenses that can be funded mainly for political gain and political exposure.

22. Defendants are aware of the funding requirements for the jail and the protection of Plaintiffs and thus the prisoners. Defendants intentionally ignore the required minimum funding requirements and are deliberately indifferent to this on-going and continuing refusal to provide adequate minimum ministerial funding for the jail facilities including adequate staffing and services.

23. Defendants, even with the use of a declared emergency, are unable to meet minimum TCJS standards due to Defendants refusal to properly fund, and thus, staff the jail facilities.

24. In late July of 2018, Defendants had direct notice that the jail facilities were understaffed chronically due to the on-going dangerous conditions being creating and exposing employees to serious and grave risk of harm. Additionally, the shortage of employees created avoidable jail employee overtime costs that were being ignored and not funded by Defendants, individually and or collectively, moving and hiding the sources of overtime by decreasing funding from other jail and sheriff expenditures.

25.  On or about February 13, 2019, Harris County was cited by TCJS for not adequately notifying the court magistrate regarding inmates with suspected mental disabilities or that are potentially suicidal as required by Texas law. Letter from TCJS Executive Director Brandon Woods to the Defendant Lina Hidalgo, Notice of Non-Compliance (Feb 13, 2019); TCJS Special Inspection Report, Inspector Wendy Wisneski, (Feb 12, 2020).

26. Defendants individually and or collectively were made aware in December 2020 of serious jail deficiencies existing and worsening due to understaffing directly caused by intentionally underfunding the jail facilities including but not limited to "hiring freezes."

27. Refusal to hire new employees, a discretionary action by Defendants, allowed county funds to be expended upon other discretionary projects of Defendants rather than on mandatory ministerial funding required by law for the protection of jail employees as well as prisoners.

28. Defendants then hired Shannon Herklotz, former employee of TCJS, in January 2021 as Chief of Detentions. He was hired to assist in avoiding the jail facilities failing TCJS inspections and use his expertise to create a staffing façade so that Defendants could mislead and misrepresent to TCJS that Defendants were in compliance with minimum jail staffing requirements.

29. Defendant Lina Hidalgo made a public statement acknowledging Defendants, individual and or collective duties were to ensure "that jail staff are safe, and the people leaving our custody leave at least as well as they came in." This statement was known to all Defendants to be intentionally false and misleading.

30. Defendants, individually and or collectively, intentionally refused to provide additional funding or release the overall hiring freeze and continued to fund discretionary projects for political and or personal interest gains and or promises.

31. Subsequently, Plaintiffs working conditions became worse and extremely dangerous. Plaintiffs were denied substantive due process by being held out as scape goats without any opportunity to defend or given the opportunity to address the deplorable working conditions that were worsening due to lack of staffing and reasonable expenditures for necessary supplies.

32. Defendants, individually and or collectively, unanimously passed a $3.3 billion dollar county spending budget for fiscal year 2021-2022.

33. Even though the jail facilities were severely understaffed and improperly manned, the spending budget did not include funding for overtime costs being incurred by the intentional understaffing of the jail facilities.

34. Defendants did not ever try to address the deplorable worsening jail conditions until Plaintiffs filed this action. Plaintiffs pursuant to state statutes and TCJS have a special relationship with Defendants as Plaintiffs have defined property interests in their employment and statutes were enacted to enable Plaintiffs' special relationship of being responsible for protection and security of the inmates while at same time being responsible for protection of similarly situated jail employees in a dual responsibility role.

35.  Tex. Admin Code §260.101 states that "Facility security shall be planned to protect offenders from one another, protect staff and visitors from offenders, and deter or prevent escapes. The level of security shall be commensurate with the degree of security sought to be achieved." Harris County has intentionally refused to meet this jail standard.

36. As a direct result of the Defendants, individually and or collectively, intentional conduct of refusing to provide the necessary ministerial funding for proper staffing of the jail facilities, the following are known by Defendants to provide notice of the jail conditions and increasing dangerousness to jail staff and prisoners due to inadequate staffing:

a.   6,352 reported incidents of inmates assaulting each other in the jail.

b.   Significant increase of inmates assaulting staff members.

c.   Jail staff being assaulted by inmates throwing urine and feces on staff members.

d.   Assaults on staff (especially female staff) are being planned and implemented by inmates due to known schedules that have to exist because of improper staffing.

e.    New jail staff personnel, when able to be hired, are known by inmates to not be adequately trained, forced to work alone, are easy targets for assaults and attacks.

f.   Employees are forced to enter cells alone so that Defendants can claim that they are meeting jail standards only on observation rounds.

g. Inmates are denied regular and necessary medical treatments due to staff storages, as result several inmates have died.

h. Inmates have been able to receive various drugs and or other contraband due to staffing shortages. The resulting use of drugs by inmates has caused numerous inmate deaths and multiple inmate hospitalizations.

i. The drug usage in the jail remains unchecked and now has, and is resulting in, jail staff having to use earned leave to recover from the exposure to such drugs. Defendants, collectively, profit financially from selling inmates various items in commissary which can be used to create fire to smoke the drugs. There is no adequate ventilation in the jail facilities to protect the employees and or other inmates from illegal drug usages.

j. There is no control over maintenance contractors who have free access to the jail without supervision due to lack of staffing.

k. Female nursing staff were required to work along without jail staff escorts and were increasingly assaulted and or injured due to inmate assaults and attacks.

l. Inmates are being allowed to roam the hallways without staff escorts to go to various appointments and or treatments within the jail due to staffing shortages. As a direct result, one female supervisor was brutally beaten and raped by an unescorted inmate.

m. A medical technician was assaulted by an inmate after receiving an x-ray. The staff member was being choked and believed the inmate was attempting to kill him. HE was rescued by another staff member who happened to walk by. The technician had to be hospitalized with serious injuries as a direct result of understaffing.

n. A staff member being funded by federal grant monies to treat and or assist inmates with mental health counseling needs, which require as part of the grant that inmates must be escorted to their appointments or that she be escorted to meetings, has been intentionally left alone and no escorts provided for her or inmates. In violation of the federal grant, she was locked in a room with inmates alone as there was insufficient staff to escort and or remain with her as required.

o. Jail Command Staff including but not limited to Shannon Herklotz, under the direction of Defendant Sheriff Gonzalez, are allowing the improper classification of inmates which has resulted in a number of assaults and at least one brutal murder of a young frail inmate with serious mental health issues being placed in same cell as an inmate who openly vowed to kill anyone housed with him.

p.  In violation of expenditure of federal grant monies, inmates with mental health conditions are improperly classified and or housed and denied treatment; and inmates experiencing mental health episodes are allowed to roam the halls and or are placed with other inmates thereby being harmed and or causing harm.

q.  Insufficient staff exists to conduct inspections for weapons and contraband.

r.  The only policy vigorously enforced is visual rounds done with a devise called "CorreTrak" rounds. This is part of the fabrication of records by command staff to mislead TCJS to gain a passing compliance orchestrated by Shannon Herklotz, under the direction of Defendant Gonzalez, through the use and manipulation of government records to show compliance.

s.  Inmates are allowed to jam their electronic cell door locks to be able to push their doors open when supposed to be electronically locked due to insufficient staffing and inability to inspect, repair, and or prevent such activity by observations. As a result, many staff members have been assaulted due to such attacks and or other inmates attacked when nothing could be immediately done to prevent and or minimize the assaults.

t.  Staff are denied necessary and or specialized training and forced to deal with problem inmates alone without sufficient training and or assistance.

u.  Staff members are being forced to go into cells and or holding areas alone due to insufficient staff to attempt to break up fights between inmates and are then subject to being assaulted. Back-up is unavailable due to staff shortages for a considerable length of time. Staff members are unnecessarily assaulted and or injured as a result of inadequate staffing.

v.  Jail staff members have been and are still required to work mandatory overtime hours up to 16 hours a day due to staff shortages. Staff members are severely punished and or terminated if late due to childcare issues and or family health problems.   The emotionally abusive atmosphere created by Defendants' refusal to provide adequate staffing is causing employees severe emotional trauma and health problems from increased stress.

w.  Due to staff shortages, a hospital escort deputy was forced to escort an inmate alone after working long hours. The inmate acted docile until allowed to use the bathroom facilities. The inmate was able to over-power the deputy acting alone briefly and got control of the deputy's gun and shot him in the hand. The inmate was finally able to be controlled but would have killed the deputy had the deputy been unable to gain control and disarm the inmate.

37. Tex. Admin Code §260.118 states "A sufficient number of jailer stations shall be provided on each floor where inmates are housed. Staff toilets and lavatories should be provided in close proximity to jailer stations." Harris County does not meet this jail standard. Jail staff are being forced to use garbage bags or trash cans as toilets.

38. The guidelines of the Occupational Safety and Health Administration (OSHA) state that employers are required to provide workers with prompt access to clean restrooms. "The sanitation standard is intended to ensure that employers provide employees with sanitary and available toilet facilities, so that employees will not suffer the adverse health effects that can result if toilets are not available when employees need them." Interpretation of 29 CFR 1910.141(c)(1)(i): Toilet Facilities, Memorandum to OSHA's Regional Administrators, U.S. Department of Labor: OSHA, Compliance Programs, April 6, 1988; *See* 29 CFR 1910.141. "Toilets that employees are not allowed to use for extended periods cannot be said to be 'available' to those employees." *Id*. "Timely access is the goal of the standard." *Id*. These standards are set in order to protect workers from health complications that can occur when a bathroom is not readily available such as bladder problems, bowel issues, and urinary tract infections. *See* 29 CFR 1910.141.

39. Jail staff employees are being left locked inside inmate observation pods without breaks for multiple hours. Even when jail employees are calling for breaks and begging for the opportunity to take bathroom breaks, they are ignored or denied due to the fabrication of observation rounds supposedly being performed so that Defendants can claim compliance with TCJS standards. The pod control must be occupied 24/7 even though there is no available relief for eating, breaks, or using toilet facilities.

40. Most all jail employees are forced to stay in the control centers for 12 hours or more and are not allowed to have any breaks for bathroom or eating.

41. Having been made aware of the abuse and denial of bathroom or meal breaks for 12 hours at a time, especially for female employees and the seriousness of the abuse of employees, Defendant Lina Hidalgo has stated that such claims are simply political as to her personally which results in continued denial to perform her ministerial duties to adequately provided funding to fully staff the jail facilities. Female staff members are left alone and denied bathroom breaks and told to urinate in a plastic bag like the male employees can do.  However, as Defendant Hidalgo was made keenly aware, such is not possible other than being forced to crawl underneath a desk out of sight of the inmates and partially undress to attempt such a feat. Such requirements by Defendants are degrading and abusive yet continues on a daily basis due to Defendants' refusal to adequately staff the jail facilities. Defendants negative attitudes represents a deliberant indifference.

42. Defendants' omissions include but not limited to, refusing to provide adequate drinking water for either the inmates or staff during heated summer months.

43. The jail employees were required to work at least 12 hours per day and are now having to work a modified schedule where it is unlikely to attend medical appointments.

44. Jail employees are denied access to reasonable childcare due to the exhaustive and irregular hours now being forced to work. As a direct result, employees are being severely punished when childcare is unavailable due to such expanded or last-minute demands for overtime. Defendants provide such childcare for non-employees disadvantaged persons in Harris County but not to its employees performing a necessary protective function.

45. The Harris County Jail has a population of approximately 9500 inmates. Defendants are required to provide adequate medical facilities for the care of the inmates, to include staffing of medical personnel; however, Defendants fail and refuse to provide adequate staffing to provide proper medical care to the inmates. *See* Tex. Admin Code §273.2.

46. Recently, Defendants contracted with Harris Health Systems to take over all medical duties for the jail facilities. Since that time, Defendants have refused to enforce the minimum health requirements related to adequate staffing. The purpose of the contract was to provide adequate health coverages that Defendants were claiming were becoming financially burdensome. However, Harris Health, due to the continued refusal by Defendants to provide the required minimum jail staffing and escorts, has refused to provide treatment to unescorted inmates being sent to jail clinics run by Harris Health.

47. Recently, at least one or more inmate deaths are directly related to the continued refusal of Defendants to properly provide required funding for minimum jail staffing to prevent such harms. There are no local triage rooms staffed or available and inmates are being denied regular access to medical treatment or evaluations.

48. Defendants continue to exhibit and show a deliberate indifference towards inmate healthcare or the health and well-being of jail staff.

49. Inmate medications are not timely provided and or ignored due to inadequate jail staffing. This deficiency is causing an increased hostility among the inmates resulting in increased assaults on staff.

50. Defendants refusal to abide by TCJS creates a known hostile work environment as inmates become increasing hostile and combative when denied basic right to care.

51.   The 701facility experienced sewage flooding problems over an eight-month period which prevented access to the law library, medical clinic, and basement control due to lack of funding and maintenance personnel. Inmates became agitated as a result.

52. According to jail standards, Defendants must provide doors to inmate secure areas that can be locked and unlocked safely. Defendants have failed to meet this jail standard. *See* Tex. Admin. Code §260.136; §260.148; §260.150; §260.152. This failure makes jail staff vulnerable to and the focus of inmate assaults and hostilities.

53. The inmates are able to manually open their doors, by passing electronic controls in order to fight other inmates or jail staff. Videos exist showing inmates opening their doors where an inmate in order to rush at staff members and assault them. This is a continuing problem made worse by lack of staffing and required funding and building repairs.

54. Plaintiffs, who are not certified deputies, are being denied the same worker's compensation coverage as deputies though they can be in the same environment in the jail and subject to the same injuries. Often, detention officers have to go weeks without coverage for their injuries. Defendants control workers' compensation processing.

55. Jail Standards states that the "[t]emperature levels shall be reasonably maintained between 65 degrees Fahrenheit and 85 degrees Fahrenheit in all occupied areas" and that there should be sufficient ventilation to provide fresh air. Tex. Admin. Code §260.154-260.155. Harris County fails this minimum jail standard as the ventilation is defective.

56.   Jail employees, as well as inmates, are being subjected to substandard heating or cooling in the jail facilities. A jail supervisor has passed out from excessive heat. Other jail employees are being made sick from the excessive heat while being forced to work without

sufficient access to drinking water. This lack of water for either Plaintiffs or inmates created intolerable abusive conditions placing staff subject to attacks and injuries that would not otherwise be present with adequate staffing, supplies and funding.

57. Jail Standards dictates that "[t]wo-way voice communication shall be available at all times between offenders and jailers." Tex. Admin. Code §260.161. Harris County fails this standard as communications equipment is substandard and usually broken.

58. Communication with the inmates is an ongoing problem. The speakers for inmate communications commonly gets damaged or do not work. There are inmate pods that have a chronic issue with a lack of speaker communications. Communications between inmates and staff is very important in order for the detention officers to speak to the inmates to give them orders on compliance and to check on their conditions and complaints.

59. Denial of communications has resulted in increased hostilities with inmates as well as allowing the inmates to harm each other and or jail staff.

60. Minimum Jail standards requires that fire safety equipment be provided, and the staff be trained in its use in order to combat fire emergencies in the jail facilities. *See* Tex. Admin. Code §263.53- 263.56; §263.70. Harris County fails this jail standards.

61. Inadequate jail staff has increased the risk of harm unnecessarily to jail staff as there is currently insufficient staff to deal with fire and or life safety emergencies.

62. A jail supervisor reported that on the 7th floor, 701 facility, there were several fires a shift. The jail staff is expected to put out all fires in the detention buildings. Detention officers are given cursory fire training when they go through the academy but because of understaffing, there is little to no follow up training, such as equipment drills.

63. The facility conducts fire drills, but the floors are so understaffed staff cannot respond. Inmates on the 7th floor of the 701 jail light fires in their cells at least once a day, sometimes more. Nothing has been done by Defendants to prevent the inmates from lighting the fires. The ability to start fires is directly related to the items provided by Defendants in the commissary purchased by inmates at a considerable profit to Defendants.

64. The fires being lit are in part to enable inmates to smoke illegal drugs smuggled into the jail which are making employees ill, exposing them to unnecessary risks of harm.

65. Inmates frequently set fires, sometimes two or three a day, on the 2nd floor of 1200 jail to smoke drugs. When staff are called to put out fires, they have to leave their duties protecting nurses managing the medication cart unescorted resulting in denial of inmates to their medications as well as creating dangerously low staffing for other jail operations.

66. Jail standards requires that Defendants to provide sufficient staff to adequately provide for the care, custody, and control of the inmates 24 hours a day. Defendants refuse to meet this standard by intentionally understaffing the jails and lack of supplies.

67. Defendants must provide enough staff to conduct mandated rounds. Tex. Admin. Code §275.1. Defendants must at a minimum provide one employee to have direct supervision of up to 48 inmates. Tex. Admin. Code §275.4. Defendants intentionally refuse to meet this minimum jail standard daily and fabricate documents to mislead inspectors.

68. When Defendants meet the minimum ratio, staff are still unable to properly conduct inmate rounds, properly care for the needs of the inmates, or properly secure the jail. Even if the facilities facially meet the 1 to 48 ratio, Harris County is out of compliance with jail standards as no other duties can be sufficiently provided creating hostile inmates.

69. Chief Shannon Herklotz, acting on behalf of and in the employment of Defendants, is allowed to manipulate the staffing schedules to facially show that minimum requirements are being met when they are not. He does this for the benefit of Defendant Sheriff Gonzalez. Due to his well-known long-standing relationship with the TCJS, the false and misleading documentation is being ignored and overlooked so that Defendants appear to have passed TCJS inspections. Shannon Herklotz and other Jail Command staff members were rewarded by Defendants by being able to take time off work to go on a jail command staff ocean cruise while there existed severe deficiencies in staffing and actual compliance.

70. After the initial filing of this action, Defendants promised Defendant Gonzalez and jail staff, additional personnel condition upon showing a reduction of overtime hours. The additional personnel were insufficient to show overtime reduction so that jail command staff manufactured a new oppressive work schedule. The intention was to make it appear that there was a more efficient use of staff personnel to cover up Defendants' intentional refusal to properly staff the jail; however, overtime has not decreased, and chronic understaffing continues to create an unsafe work environment and angry inmates.

71. Harris County does not appropriately document staffing numbers to the TCJS. The continuous lack of staffing creates egregious safety issues for both staff and inmates. Defendants are fully aware of staffing issues and increase in a dangerous environment.

72.  The staffing reports transmitted to the TCJS are always incorrect, misleading, and intentionally designed to avoid accountability and are essentially fabricated because most floors of jail facilities cannot stay in compliance throughout the entire shift. Defendant Gonzalez, through Chief Herklotz, has created a shell game of moving staff from one

section to another to be counted on multiple floors at the same time to make ratios for the paperwork to be filled out. This fabricated shell game activity is done daily and is known and approved by the Defendants to appease TCJS avoiding a negative finding.

73. Supervisors and or others are being improperly counted to make minimum manning ratio along with overtime workers that will not be available the whole shift. This fabricated paperwork makes it appear on paper only that the jail is in compliance, when it is not. This has been reported to TCJS but ignored for the benefit of Defendants.

74. The safety of the staff and the inmates are continually in jeopardy because the jail is severely understaffed, in disrepair, and inmates are allowed to roam the halls to meet their appointments. A detention officer going to the health clinic with another inmate was punched in the back of the head by an unescorted inmate, blindsided due to staff shortages.

75. Almost daily, command staff count people that do not have direct contact with inmates, who do not respond to floor issues, and who never directly supervise the inmates in the 1 to 48 ratio to gain compliance. When command staff count the auxiliary staff, those employees do not move to the floor in order to provide necessary services and or security for other jail employees. This conduct creates an avoidable hostile environment

76. Jail employees are initially counted for one building or floor then moved to another building or floor. This shell game usually results in one employee being forced to supervise approximately 110 inmates alone indicating a complete indifference to staff safety.

77. Recently, a jail staff member was forced to work a floor alone when an inmate assaulted and brutely beat another inmate while the employee was locked in in a four-sided pod alone with no ability to leave and there was not sufficient staff to provide back up.

78. The beating was captured on camera and resulted in hospitalization of the other inmate. The injuries could have been minimized if sufficient staff had been provided.

79. The fabrication of CorreTrak rounds to make it appear that the jail facilities are in compliance with TCJS standards comes before responding to inmate assaults or injuries.

80. The JPC is chronically understaffed due to staff being pulled to meet minimum staffing in 701 and 1200. The JPC required minimum staffing is sixty employees, but it has been forced to function with as little as thirty-seven. On August 10, 2021, there were only forty-three employees. This shortage is a daily occurrence and results in a lack of supervision and increased injuries to inmates and staff. Defendants conduct is unjustified.

81. JPC staff are being pulled to work housing and it is putting a strain on the JPC operations and security. The excessive wait time keeps the officers of all Harris County law enforcement agencies off the street longer while they attempt to check in a new prisoner.  Delays for inmates being processed in and out of the jail creates hostilities.

82. Jail standards mandates that "[f]or the protection of jail personnel and inmates" searches for contraband must be conducted. Tex. Admin. Code §275.6. Defendants fails this minimum jail standard and exhibit an attitude of indifference towards staff safety.

83. Secondhand synthetic marijuana (k-2 and or fentanyl) smoke can carry the same toxic properties as firsthand smoking of the drug and can cause the same damage to a person's lungs as secondhand tobacco smoke. Employees are exposed unnecessarily due to manpower shortages from intentional lack of funding.

84. Defendants refusal to provide adequate security through minimum staffing places Plaintiffs and inmates at serious inevitable risks for serious injuries unnecessarily.

85.  Employees and nursing staff, working in the jail facilities are regularly exposed to inmates smoking of drugs where the fumes have become so bad that employees are getting sick from the exposures. Defendants remain deliberately indifferent to such exposures.

86. The nursing staff are now being called on more emergency codes due to the smoking of drugs and or overdoses on drugs smuggled in causing inmates who have chronic health problems to have excessive delays in treatment or to miss treatment due to understaffing. In August 2021, an inmate died from an overdose of MDMB, a synthetic marijuana in pod 4B in 701 jail due to lack of jail staff and supervision.

87.  Drug problems are so pervasive that when an employee enters most inmate floors, a haze of toxic drug smoke is confronted by the staff or other inmates. The smoke negatively affects the employees, causing headaches and other health issues. Respirators and other safety gear are not provided to protect the staff from the toxic smoke. The smoke is generated by Defendants providing such commissary items as electric "hot-pots" that are known to be used to start fires through electrical shorts. Defendants refused to take action.

88. K2 smoke is so prevalent at various jail facilities there was visible dark mold in the ceilings and vents. Employees are experiencing headaches, being lightheaded, coughing and watery eyes. Defendants refuse to provide safety equipment or personnel to conduct cell searches for contraband. One inmate while getting high, fell and injured his head and was sent to the hospital unconscious. Defendants remain indifferent to staff safety.

89. Jail standards requires compliance with the standards set by the TCJS. *See* Tex. Admin Code §297.1 – 297.3; §297.5-297.6. Defendants intentionally refuse to take the required necessary steps to monitor safety compliance or follow up on violations.

90. Defendants disregard any necessary actions to keep the jail in compliance for the protection of staff or inmates. No proper documentation is done for compliance issues.

91. Newly hired employee/trainees are now being put on the employee roster to make it appear there is compliance with TCJS and Defendants are meeting staffing shortages.

92. New, untrained employees are being utilized for tasks for which they have not been trained and are denied valuable training by being used as an employee prior to the completion of training. These employees are being unduly exposed to a greater risk of harm without completion of training.

93. An email communication from Chief Shannon Herklotz, on behalf of Defendants, to all criminal justice command staff, blames the inability to transition to four 12-hour shifts on the employees who previously utilized their accrued legal benefits such as sick time or FMLA and or worker compensation benefits. *See* email CJC Attendance Issues, May 13, 2021. The email acknowledged that jail staff have been overworked and staff are not able to continue with the extended work hours and stress. Chief Herklotz also admitted that jail employees, like Plaintiffs, have been denied a healthy work-life balance and employees needed more time off to be with family. Chief Herklotz promised jail staff a 48-hour work week with another day off to reduce stress and promote family time.

94. Defendants caused such extra day off not to be implemented due to their continued refusal to adequately provide the required funding for jail operations. Plaintiffs continue to suffer an unhealthy work environment and excessive work hours despite the new schedule. Jail staff are being forced to work 16-hour shifts or being forced to work on their days off. This abusive work environment is known to be harmful to jail employees.

95. The email admits and recognizes Harris County jail operations are "currently at critical levels when it comes to safely staffing our jails" and that lack of staffing possess "a serious safety issue not only for the inmates but for our team members."

96. Jail staff, such has Plaintiffs, are suffering systematic abuses by Defendants when they attempt to use their earned benefits for personal health issues and are denied.

97. Defendants have intentionally created intolerable working conditions and have continued to allow the abusive conditions of employees and avoidable risks of harm.

98. Plaintiffs are being denied and or deprived of their property rights in their employment benefits, without due process and or ability to use their accrued benefits to care for family members and or minor children due to Defendants continued intentional refusal to execute their ministerial duty to provide adequate funding to safely operate the jail by providing required and available funds to hire sufficient staff.

99. Defendants are essentially taking Plaintiffs earned benefits and accrued leave without just compensation and extending the time for employees' ability to use such time to become meaningless for the use of employees for the maintenance of the employee's mental health and or ability to care for an employee's children and or family.

100.      At all times relevant to this case, Defendants were joint participants with respect to establishing policies, practices, procedures, customs, and usages regarding safety of employees as well as inmates. Defendants remain deliberately indifferent to harms to staff.

101.      Defendants intentionally and recklessly ignored such requests to provide adequate ministerial funding and staffing with deliberate indifference to the safety needs

of Plaintiffs or inmates by intentionally refusing to perform their mandatory ministerial duties.

102.    Defendants intentionally refuse to provide necessary funding for minimum jail operations knowing that jail staff will face avoidable harm and injuries.

103.    At all times relevant to this case, Defendants were joint participants with respect to establishing policy, practice, procedures, customs, and usages regarding safety for jail employees and inmates. Defendants intentionally refused to address the issues.

104.    The intentional conduct of Defendants, individually and or collectively, by continuing to refuse to provide required minimum funding for jail staffing was negligent, knowing, intentional, reckless, wanton, and deliberately indifferent to the serious safety needs of Defendants' employees as well as inmates housed in Harris County Jail facilities.

105.    The Defendants have a history of ignoring the inhumane conditions at the jail and contributing to unhealthy and dangerous conditions at the facility for inmates and staff.

106.    An example of Defendants deliberate indifference exists in the annual jail inspection by the TCJS for 2022, as compared to the failure two months before in November 2021. The only change in adverse conditions was the fabrication of minimum staffing numbers provided to TCJS. This fabrication provided a finding by TCJS that Harris County was in complete compliance without a need for increased staffing or funding.

107.    The Harris County jail facilities remain chronically understaffed, lacking the necessary and required minimum staffing levels whereby essential duties to both inmates and staff are seriously lacking, creating an intolerable unsafe working condition for staff.

108.     As a result of all the information above, the policies and other information, Defendants' failures were intentional, reckless, knowing, willful, wanton, and deliberately indifferent, constituting gross negligence and conscience shocking conduct.

109.     The current jail conditions are in direct contravention of the applicable proper standards of care and protection for employees as well as prisoners and maintains a hostile dangerous conditions for employees that is avoidable.

110.     The conduct of Defendants intentionally created a danger to Plaintiffs safety, freedom to pursue life, liberty and the pursuit of happiness, and ability to perform their duties for the protection of themselves and the prisoners.

## V. CAUSES OF ACTION

### FIRST CLAIM FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF
### (Fourteenth Amendment - Substantive Due Process - State Created Danger)

111.     Plaintiffs repeat and incorporate each and every allegation contained in the paragraphs above as if fully set forth herein.

112.     All the acts and or omission of the Defendants described both above and below were taken pursuant to policies, practices, and customs of Harris County and or the Harris County Sheriff's Office and were authorized, sanctioned, implemented, permitted, and ratified by Defendants functioning at a policymaking level regarding their ministerial non-discretionary obligations.

113.     Defendants, individually and or collectively, created or exacerbated the danger of private violence by inmates against individual jail employees that would not exist other than Defendants' failure to perform their ministerial duties of providing required

minimum funding for operation of the jail facilities under minimum manning standards required by TCJS. Plaintiffs are being subjected to inevitable serious harm due to such conduct that is avoidable.

114. By the intentional acts, omissions, policies, practices, and or customs of Defendants' functions at a policymaking level, Defendants individually and or collectively denied Plaintiffs' constitutional rights of due process and equal protection under the Fourteenth Amendment to the United States Constitution as applied to the states.

115. The Defendant's actions, individually and or collectively, violated clearly established federal constitutional rights of which any official would have known.

116. At all times material hereto the Defendants, individually and or collectively, participated in, implemented, authorized, and or sanctioned the federal constitutional deprivations described herein.

117. At all times material hereto the Defendants, individually and or collectively, and their agents were acting under color of law pursuant to Defendants' directions. The federal constitutional deprivations described herein are fairly attributable to Harris County through the acts or omissions of the Defendants.

118. The Defendants, individually and or collectively, either knew or showed an intentionally negligent and or reckless disregard for the matters of whether their acts or omissions, individually and or collectively, constituted conduct that violated federal constitutional rights as identified herein.

119. The acts and or omission of the Defendants, individually and or collectively, as well as through their agents or employees were deliberately, intentionally, willfully,

purposefully, and knowingly done in reckless disregard to being a violation of federal constitutional rights and due to the exercise of those rights.

120.     Defendants acts and or omissions were malicious, outrageous, wanton, and taken with evil motive, in bad faith, out of personal animus and without any reasonable grounds to support them and or for personal political gain which is conscious shocking.

121.     Plaintiffs' attempt to exercise their rights under the U.S. Constitution has made a difference in all actions taken by Defendants, individually and or collectively, which are averse to Plaintiffs and now have resulted in a significant increase in a general retaliatory animus by Defendant Gonzalez against jail personnel in general.

122.     Those employees that would be considered as part of the pool of Plaintiffs collectively that have appeared to exercise of these rights have been and continues to be a motivating, substantial, or determinative factor in all actions being taken against such jail personnel that is averse to Plaintiffs collectively.

123.     The Defendants acts and or omissions, individually and or collectively, have not reasonably been shown or believed to be necessary to accomplish any legitimate governmental purpose. Defendants are intentionally refusing to properly fund the jail.

124.      The Defendants' acts and or omissions, individually and or collectively, were, have been, and continue to be motivated by bias, bad faith, and improper motives and in retaliation for the bringing of this action to cast light upon a defective operation.

125.     Defendants' acts and or omissions, individually and or collectively, constitute an abuse of governmental power and a refusal to provide safe jail conditions.

126.     Defendants' acts and or omissions, individually and or collectively, do not further any narrowly drawn important, substantial, or compelling governmental interest. Actions of Defendants are deliberately indifferent to known avoidable risks to jail staff.

127.     Defendants' acts and or omissions, individually and or collectively, are not so reasonable as to further any governmental interest asserted and do not closely fit the goal of serving those governmental interests. Defendants are creating and maintaining an abusive and dangerous work environment that should not exist. Defendants' acts and or omissions, individually and or collectively, were capricious, irrational, arbitrary, egregious, and outrageous. Defendant refuse to ameliorate the dangerous conditions.

128.     Defendants' acts and or omissions, individually and or collectively, are deliberately indifferent to the safety, well-being, and security of the detention facilities as sufficient to shock the conscience of the court as denying reasonable protections to the citizens of our country and or Harris County.

129.     The Plaintiffs – jail personnel – are not random members of the public but instead, as Detention Officers, Deputies, medical staff, and administrative staff of the jail facilities. It is foreseeable and known to Defendants, independently and collectively, that Plaintiffs would be exposed to the serious and avoidable health and safety risks created by Defendants' policies of deliberately understaffing the Harris County jail facilities through intentional refusal to provide adequate funding thereby creating gaps in coverage by reducing manpower, increasing serious threats of harm without sufficient personnel to perform the basic functions required by law that is non-discretionary, thereby knowingly

increasing the risks to Plaintiffs collectively through inadequate funding and refusal to hire and sufficient staff to operate the jail facilities to protect the inmates.

130.     Plaintiffs as a group are specialized and identifiable limited group of employees who need to be protected by providing adequate resources so they can act.

131.     As set forth at length above, Defendants, individually and or collectively, were not faced with a situation where they had to make any split-second decisions, they were not operating in a hyper-pressurized environment in which they were being forced to act quickly or with urgency, nor did they have only minutes or hours to act. Defendants were continually apprised of their refusal to fund or hire sufficient personnel regarding the funding and adequate staffing to the Harries County Jail. Defendants, independently and or collectively, elected to not perform their ministerial duties and intentionally defunded the jail operations. This adverse conduct by Defendants creates a hostile work environment.

132.     Defendants, individually and or collectively, had the opportunity to proceed in a deliberate fashion for at least the last three (3) years or more; the luxury of thinking about the issues; the chance for repeated reflection; and extended opportunities to do better. They were faced with a situation where they had the time to make unhurried and considered judgments. Defendants refused to act which created and maintains a hostile environment.

133.     Defendants were constantly made aware of the dire situation at the jail facilities for both the employees as well as the inmates. Defendants made conscious decisions to refuse to provide less than adequate funding or create situations where personnel could not be hired by creating false, fabricated, or misleading hiring freezes even though more than adequate funds were available at all times to ensure adequate staffing.

134.     Defendants have each year declared the existence of an emergency (now lasting for over 20 years) in order to justify reduced minimum staffing at the jail. Defendants knew such statements were intentionally false and misleading as Defendants intentionally refuse to act and properly fund the jail as required by law.

135.     Defendants, individually and or collectively, consciously disregarded a substantial and a great risk of serious harm to the staff as well as inmates, which was obvious, apparent, and grave. They were actually aware of these risks of harm because it was brought to their attention by numerous requests for personnel and additional funding as well as budget requests and public news regarding injuries at the jail facilities.

136.     Defendants misused their authority to create an increase for a foreseeable danger from private persons detained at the jail facilities harming Plaintiffs as well as then failed to protect Plaintiffs from these foreseeable dangers.

137.     The Defendants, individually and or collectively, acted with "deliberate indifference" to the dangers created by intentional underfunding adequate jail staff. *See Bustos v. Martini Club Inc.*, 599 F.3d 458, 466 (5th Cir. 2010).

138.     Defendants, individually and or collectively, both knew of, were indifferent to, and deliberately disregarded an excessive risk to the Plaintiffs' health and safety in a way that shocks the conscience. *Beltran v. City of El Paso*, 367 F.3d 299 (5th Cir. 2004).

139.     Defendants, individually and or collectively, possessed the knowledge that their acts and or omissions to refuse to properly perform their ministerial duties of providing adequate funding for the safe operation of the jail facilities for the protection of the inmates as well as the jail staff would result in the increased likelihood of preventable

injuries to either or both the inmates and or jail staff. *See Lester v. City of Coll. Station,*
103 F. App'x 814, 815 (5th Cir. 2004). Defendants', individually and or collectively,
affirmative acts, and or omissions include, but are not limited to, policies that they
authorized, created, and implemented, refused to enforce, and refused to fund such as:

a. Intentionally refused to fill, and instead left vacant, numerous detention
officer, deputy, and or staff positions that were previously fully funded by
Defendant Harris County, through Harris County Commissioners and are
positions mandated by law for the safe care custody, and control of the inmates;

b. Took detention personnel and did not replace them, thereby depriving the
detention facilities of the minimum and necessary personnel necessary to operate
the jail facilities safely;

c. Intentionally forced and required Plaintiffs to work inappropriate long
working hours of overtime and intentionally depriving them sufficient time off
to care for their families and children;

d. Prevented an adequate number of detention employees to respond to any
emergency and or provide the necessary supervision and care for the inmates;

e. Allowed the fabrication of documents by command staff to make it appear
that minimum staffing levels were being maintained when such was known to
Defendants, individually and or collectively, as insufficient.

f. The Defendants, individually and or collectively, refused to comply with their
statutory (ministerial) duties to keep the actual manpower level sufficient to

ensure all base and necessary functions of the Harris County Jail facilities were properly maintained;

g. No adequate funding to allow hiring of jail manpower; and or to adequately provide material supplies or resources to provide the minimum staffing for a safe and secure jail facility to reduce the existing hostile environment.

h. Since 2019, through the deliberate policy objectives of the Defendants, the adverse conditions and manpower deterioration has been significantly risen causing a significant increase in the danger to Plaintiffs.

140. Plaintiffs are the immediate, direct, and foreseeable victims of Defendants' failure to properly and adequate fund and or staff the jail facilities and the harms the Plaintiffs are subjected to are foreseeable and direct.

141. Defendants acted with a deliberate indifference that is conscious shocking by intentionally refusing to provide adequate funding for the safe operation of the jail facility.

142. Defendants, individually and or collectively, comprise the actions of Defendants regarding the staffing and funding for the protection of employees and inmates.

143. Plaintiffs are a specialized class of employees and foreseeable victims of the acts and or omissions of Defendants actions by exposing Plaintiffs to inmates housed at the Harris County jail facilities through the intentional refusal to provide minimum funding for the required, necessary, and state mandated minimum operations for the safety of inmates and or Plaintiffs.

144. Defendants' intentional refusal to perform their ministerial duties of providing minimum funding for the necessary operation for the safety of inmates as well

as jail staff, rendered Plaintiffs subject to a significantly increased danger that was foreseeable and preventable if Defendants had performed their mandated ministerial duties by providing adequate funding and staffing.

145.   Plaintiffs seek injunctive relief to ensure that Defendants perform their mandatory ministerial duties to adequately provide available funding to properly staff the Harris County jail facilities.

146.   Plaintiffs are the immediate, direct, and foreseeable victims of Defendants' failure to properly and adequate fund and or staff the jail facilities and the harm the Plaintiffs are subjected to is foreseeable and direct. There is a direct and natural link between the Defendants' intentional underfunding and resulting understaffing of the jail and the harms complained of by the Plaintiffs.

147.   Defendants, individually and or collectively, intentionally falsified and or manipulated reported staffing and ratio data in order to give the false perception they are meeting minimum jail standards when such is false and misleading.

### SECOND CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF
### (Fourteenth Amendment - Substantive Due Process - Maintenance of Policies, Practices and Customs in violation of 42 U.S.C. §§ 1983 and or 1988)

148. Plaintiffs repeat and incorporate each and every allegation contained in the paragraphs above as if fully set forth herein.

149. All decisions made by the Defendants, individually and or collectively, were policies, practices, and/or customs fairly attributable to Harris County.

150. The Defendants, individually and or collectively, executed an understaffing policy, practice, or procedure by refusing to fill vacant Detention officer, deputy, and or staff positions which already were fully funded by Harris County.

151. The decisions made by the Sheriff Gonzalez, by and through Chief Shannon Herklotz, are such policies, practices, and or customs fairly attributable to Harris County either as a result of the actual creation of and subsequent orders to their subordinates to abide by such policies, or through implementation of those policies created and ordered by Defendants knowingly creating a hostile and abusive work environment.

152. Section 1983 authorizes a plaintiff to seek declaratory relief under the 14th Amendment and permanently enjoin Defendants, individually and or collectively, from refusing to provide minimum funding for jail staffing requirements prior to expending funds on discretionary expenditures.

153. Defendants, individually and or collectively, implemented the Defendants' acts, omissions, and or policies of refusing to fill vacant Detention positions which were already fully funded through Harris County property taxes and or specified federal grants.

154. The policies established by Defendants, individually and or collectively, purposefully disregarded the intentional and foreseeable risk of harm to Plaintiffs by the intentional refusal to maintain adequate staffing levels in a known hostile environment that would be increased by refusal to provide minimum jail staffing levels.

155. Other identifiable members of the Harris County communities were provided discretionary funding that was removed from ministerial funding that should have been used under state law to provide for a safe and secure jail facility.

## THIRD CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF
### (No sovereign immunity exists under 42 U.S.C §1983, 1988 for ultra vires acts)

156.   Plaintiffs repeat and incorporate each and every allegation contained in the paragraphs above as if fully set forth herein.

157.   Harris County, by and through Defendants, has waived its immunity to claims such as those brought by the Plaintiffs either traditionally or individually *ultra vires.*

158.   Plaintiffs have a constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment.

159.   Defendants in their official individual capacities, are subject to this Court's jurisdiction for their *ultra vires* acts and or omissions regarding providing funding for the operations and minimum staffing of the jail facilities.

160.   Defendants, individually and or collectively, intentionally failed to perform a ministerial act of providing adequate funding for the minimum staffing required under the TCJS for the protection of inmates and staff.

161.   Defendants, individually and or collectively, failed to perform their ministerial act of properly funding the minimum jail staffing requirements for the jails.

162.   Plaintiffs are specialized and identifiable group of employees with an on-going relationship with Defendants who have been harmed by the acts and or omissions of Defendants, individually and or collectively.

163.   The Defendants must provide at a minimum a "safe and suitable" county jail facility. Tex. Loc. Gov't Code § 351.001(a). The sheriff, is "the keeper of the county jail," and must "exercise supervision and control over the jail." Loc. Gov't Code §351.041.

164. Defendant Gonzalez is responsible for the actual operations of the jail. The Commissioner's Court is ministerial and limited to providing the jail facilities with minimum adequate funding for the safe operations for the protection of inmates a well as employees. *Attorney General Opinion* DM-072 (1998).

165. Harris County is statutorily required to fund the jail through the Commissioner's Court in order to meet Texas Jail Standards. *See* Tex. Admin Code §275.4.

166. Defendant Hidalgo is well aware of her duties and responsibilities regarding the Defendants oversight of minimum jail standards and appropriate funding that is mandatory which has been brought to her attention. Judge Hidalgo's public statements regarding this action as being simply political was intentionally false and misleading.

167. Defendants, individually and or collectively, have been deliberately indifferent to the horrid, hostile, and significantly increased dangerous conditions for employees as well as inmates caused by the intentional refusal to properly fund the Harris County jail facilities to meet minimum jail standards set by the TCJS.

168. Defendants should be enjoined and required by orders of the Court to comply with their ministerial mandatory statutory duties and immediately authorize sufficient county funds and or resources to bring the jail facilities to meet the Texas minimum jail standards regarding staffing and supplies to create a safe and humane working environment for its employees and for the protection of the inmates.

169. Defendants' failure to properly fund the staffing and operations of the jail facilities are acts that exceed the bounds of the Defendants' granted authority and conflict

with the state jail standards. The intentionally omission to provide minimum ministerial funding for adequate jail staffing is beyond decency and conscious shocking.

170.    There is no power or discretion for Defendants to refuse to properly fund the operations of the county jail facilities. *See White Deer Indep. Sch. Dist. v. Martin*, 596 S.W.3d 855 (Tex. App.—Amarillo 2019, pet. filed March 13, 2020).

171.    Plaintiffs have been continually exposed and or suffered injury in fact that is actual and not hypothetical by exposures to unrestrained inmates without sufficient staffing and or protections.

172.    Defendants acts and or omissions are a direct result of Defendants' conduct.

173.    The Defendants' ongoing and continuous policies, practices, and or customs of non-reporting, underreporting, misreporting, or downgrading of violations of TCJS caused the Plaintiffs irreparable harm and is a violation of law. The underfunding and understaffing will continue to result in an ever-increasing incidence of violence by inmates on staff and inmates upon each other.

**FOURTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**(Fourteenth Amendment – Denial of Due Process - in violation of 42 U.S.C. §§ 1983)**

174.    Plaintiffs repeat and incorporate each and every allegation contained in the paragraphs above as if fully set forth herein.

175.    Injunctive relief for the Defendant Edward Gonzalez regarding the pattern and practice of intentionally negatively branding employees seeking to find new employment as not being eligible for rehire and or providing a less an honorable F-5. Such actions are taken without any due process provided and or any opportunity to be heard by an employee prior to the taking of and or destruction of an employee's good name.

176.   Defendants by policy allow and promote the destruction of a jail employees reputation and or liberty interests in their good name as part of the hostile environment and disregard for employee's reputation and or exposure to unnecessary risks of harm. Such actions appear to be in relation for seeking to retire, find other employment, resign, and or leave the Sheriff's employ.

177.   The administrative actions of delaying an employee's decision to quit, retire, or transfer is being utilized by Defendant Gonzalez, through his policies and procedures to retaliate and or cause permanent harm to employees who are now forced to give two weeks' notice prior to leaving even though Defendant Gonzalez continually imposes discipline without notice or opportunity to be heard prior to imposition of disciplinary measures.

178.   Plaintiffs have provided notice regarding their desire to retire, transfer, and or leave the office to look for and or start other employment. As a direct result, Defendant Gonzalez, through his HR department and or Internal Affairs Division have created and or notified that an employee is now under investigation for purported policy violations and if the employee leaves his reputation and or good name will be immediately tarnished and he will be held up to ridicule and branded permanently with a moniker of "not eligible for rehire" and or given a dishonorable F-5 essentially preventing any future employment in law enforcement and or elsewhere.

179.   Unless enjoined such practices will continue to be used to cause employees seeking to retire, promote, transfer, and or seek other employment for months prior to a final resolution of the purported investigation.

## FIFTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF
### (Fifth Amendment through the 14th Amendment prohibiting the taking of Employees earned property (employee benefits) without due process or just compensation)

180.   Plaintiffs repeat and incorporate each and every allegation contained in the paragraphs above as if fully set forth herein.

181.   Plaintiffs are in possession of certain skills, specialized knowledge, and specialized expertise regarding jail operations which constitute Plaintiffs property.

182.   Plaintiffs during their employment with Harris County have earned and or awarded certain property rights in their accumulated pay benefits, compensation benefits, holiday benefits, worker compensation benefits, sick leave benefits based upon the fruits of their labors.

183.   Harris County Civil Service has been established by law whereby jail staff employees, such as Plaintiffs, have a statutory property right in their continued employment that cannot be taken away without "just cause". Plaintiffs have rights of due process before either their employment and or benefits can be removed or negatively impacted by Defendants in any manner.

184.   Plaintiffs, by state law are generally considered at will employees. However, Defendant are prohibited from taking adverse employment actions against Plaintiffs unless they are provided due process and sufficient proof of just cause exists.

185.   Plaintiffs due to the application of various statutes designed for the protection of Plaintiffs as well as the inmates also are also cloaked with protected working conditions that are part of their specialized rights to ensure protection from harm from inmates that Plaintiffs act to protect and keep from harm from other inmates.

186.   Defendants conduct of failing to perform their ministerial duties of minimum funding for safe jail operations have taken those statutory protections away without notice or due process.

187.   The taking of property by a governmental agency requires notice and due process. Additionally, the Defendants manipulating leave benefits, manipulating excessive working hours, and controlling the normalcy of jail operations and staffing have essentially deprived Plaintiff of their property rights without just compensation.

188.   Defendants intentional acts of controlling and manipulation of Plaintiffs earned benefits, notwithstanding the creation of such an abusive dangerous work atmosphere and demanding that Plaintiffs work in such conditions constitutes a taking of Plaintiffs' property where there is no "just compensation" for the value of that property.

189.   The taking of and or devaluing of Plaintiffs' property is solely for a public purpose albeit an avoidable purpose.

190.   Defendants need to be enjoined to prohibit the further maintenance of abusive working conditions as well as taking and or devaluing Plaintiffs' property for a public purpose without providing just compensation.

191.   Defendants should an employee elect to leave are subject to fabricated attacks on their reputations by creation of false and or misleading claims of policy violations so that Defendants can permanently impact Plaintiffs liberty interests without due process. Defendants allow such monikers as "not eligible for rehire" to be imposed on employees seeking to find a safer work environment that is not as abusive as Defendants have created.

192.   Defendants have taken and or negatively devalued Plaintiffs property with compensation. Defendants should be enjoined from such conduct.

### SIXTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF
**Defendants in their official individual capacities are liable for their *ultra vires* acts and or omissions and should be enjoined from further acts or omissions**

193.   Plaintiffs repeat and incorporate each and every allegation contained in the paragraphs above as if fully set forth herein.

194.   Defendants have failed to perform purely ministerial acts regarding basic funding for jail required to be in mandatory compliance with the TCJS as well as rights of due process. Defendants acted beyond the limits of their authority by defunding jail operations that are mandatory under the law.

195.   Defendants have utilized federal funds to support the operation of the jail but have not properly supported the jail operations as required to obtain such funds.

196.   Harris County is statutorily required to properly fund the jail in order to meet Texas jail standards. Sufficient funds are available for the funding of the jail.

## CLAIMS FOR RELIEF

A. Defendants should be enjoined from further defunding and be ordered and required to properly provide funding for the safe operations of the jail for both staff and inmates.
B. Defendants should be enjoined from further violations of due process regarding Plaintiffs' property and liberty interests.
C. Defendants should be ordered to immediately provide a staffing and funding plan to be implemented within 60 days or less.
D. Defendants should be prohibited from further use of required jail funding for discretionary projects that do not involve jail operations.
E. Defendants should be enjoined from retaliating against Plaintiffs.
F. Defendants should be ordered to pay Plaintiffs attorney fees and costs.

**Respectfully Submitted,**

/s/ *David J. Batton*
David J. Batton
LEAD COUNSEL
Texas State Bar No. 24124813 OK
State Bar No. 11750
U.S. D.C., SD TX: 438542
dave@dbattonlaw.com
3130 N. Fwy
Houston, TX 77009
P: (713) 659-0005
F: (281) 205-0426


J. Marcus "Marc" Hill
OF COUNSEL
Texas Bar No. 09638150
U.S. D.C., SD TX: 4640
marc@hillpclaw.com
1770 St. James Place, Ste 115
Houston, Texas 77056
2116 Church Street
Galveston, Texas 77550
Phone: (713) 688-6318
Fax: (713) 688-2817


Robin McIlhenny Foster
OF COUNSEL
Texas Bar No. 24072992
U.S. D.C., SD TX: 1552147
robin@legalrobin.com
3130 N. Fwy
Houston, Texas 77009
P: (713) 659-0005
F: (281) 205-0426
***Attorneys for Plaintiffs***

## <u>CERTIFICATE OF DELIVERY</u>

This is to certify that on this 20th day of June 2022, a true and correct copy of the foregoing instrument was electronically filed with the Clerk of the District Court using the CM/ECF system as well as electronic mail, which completed service on the interested parties registered with the system in this matter.

Jennifer F. Callan
Assistant County Attorney
jennifer.callan@cao.hctx.net

James C. Butt
Assistant County Attorney
james.butt@cao.hctx.net

/s/ *David J. Batton*
**David J. Batton**