IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **DALLAS GARCIA,** *Individually,* **and as a representative of the estate of FRED HARRIS, deceased,**<br><br>*Plaintiff,*<br><br>V.<br><br>**HARRIS COUNTY, TX, and HARRIS COUNTY SHERIFF'S OFFICE**<br><br>*Defendants.* | Civil Action No. 4:22cv3093<br>(Jury Trial) |

## PLAINTIFF'S 1st AMENDED ORIGINAL COMPLAINT

**TO THE HONORABLE ALFRED H. BENNETT:**

NOW COMES **DALLAS GARCIA,** *Individually,* **and as a representative of the estate of FRED HARRIS, deceased,** complaining of **HARRIS COUNTY, TEXAS** and **HARRIS COUNTY SHERIFF'S OFFICE** and will show the following:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over the federal claims of Plaintiff in this action, under 28 U.S.C. §§ 1331 and 1343, 42 U.S.C §§ 1983 and 1988, the 4th, 5th and 14th Amendments to the U.S. Constitution and under Title II of the Americans with Disabilities Act ("ADA"), the Americans with Disabilities Act Amendments

Act, 42 U.S.C. § 12131, *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act"). Venue is proper in this Court pursuant to 28 USC § 1391(b) as most material facts out of which this suit arises occurred in Harris County, Texas within the U.S. Southern District of Texas, Houston Division.

## PARTIES

2. DALLAS GARCIA, *Individually,* and as a representative of the estate of Fred Harris, deceased, is an individual residing in Harris County, Texas.

3. Defendant HARRIS COUNTY, TEXAS is a governmental body existing under the laws of the State of Texas and may be served with process by serving the Harris County Judge Lina Hidalgo at 1001 Preston, Suite 911, Houston, Texas 77002. The HARRIS COUNTY SHERIFF'S OFFICE is a part of the HARRIS COUNTY, TEXAS government.

## FACTS

4. Fred (Fred) Harris, 19, has never been convicted of a crime in his entire life. Fred was a special needs student, had an IQ (intelligence quotient) in the bottom 1% of the population, and suffered from mental illness. Fred lived most of his life with his mother Dallas Garcia.

6. Despite his severe intellectual handicap Fred attended Stafford High School where he was very well liked by other students due to his cheery and outgoing personality, so much so the students elected him part of homecoming royalty. During

high school Fred was well-behaved and had no discipline problems. Fred graduated from Stafford High School in 2020.

    7.     Fred weighed around 98 pounds.



8. For many years the Harris County jail (the Jail), the third largest county jail in the United States, has been understaffed, underfunded, and overcrowded. The Harris County jail is operated by the Harris County Sheriff's Office (HCSO). Due to these conditions the Jail has become a very dangerous place for inmates and staff alike. For example, there are not enough staff to properly handle violent inmates and special needs inmates (like Fred) who require escorting from one area of the Jail to another so as to prevent assaults upon staff and inmates or at least to intervene in assaults and thereby lessening injuries and preventing death. A horrific example is the violent sexual assault by unescorted Jeremiah Williams of a female Jail sergeant who was *in her office*. Williams was wearing a colored Jail wristband indicating he is to be escorted by Jail staff and not allowed to roam due his violent behavior.

9. In response to the assault Sheriff Ed Gonzalez (Sheriff Gonzalez), who is the elected sheriff of Harris County and top official in charge of the Jail operations, said on December 8, 2021 "the jail needs 550 to 700 new employees."

*https://www.fox26houston.com/news/concerns-raised-after-inmate-brutally-attacked-sexually-assaulted-harris-county-sergeant-at-jail*

10. The Jail is so dangerous that two anonymous Jail employees, on behalf of themselves and other Jail employees, including the members of the Harris County Deputies Organization (Deputies Union), took the unprecedented step of filing a federal lawsuit on September 20, 2022 that despite years of warnings about safety concerns about inmate-on-inmate and inmate-on-staff violence to Sheriff Gonzalez

and the Harris County Commissioners Court (Commissioners Court) for understaffing and underfunding nothing was done. The Commissioners Court is in charge of funding staffing at the Jail and can earmark funds specifically for staffing. See **Exhibit 1; Civil Action No. 4:21cv3036;** *John Doe 1, et al. v. Harris County, Texas, et al.,* which is incorporated by reference as if fully set forth herein. Deputies Union President David Cuevas stated:

> *"It's unfortunate we're in that position, but that's what it is. All the assaultive behaviors from inmates on staff, over **6,000 inmate-on-inmate fights**. We are not able to maintain security of the facility and we're not able to maintain security for our personnel as we've seen with this brutal attack that happened on one of our sergeants, one of our sisters," says Cuevas. "We've heard from our detention staff. They've called our union, crying, upset, shaken; and it's rang loud and clear to us. They need help and nobody's listening. We need Commissioners Court to do their damn job, provide us the resources, the funding."*

The aforementioned 6,000 inmate-on-inmate assaults were for the period from January 1, 2021 until sometime in the September 2021.

11. A late 2021 inspection by a Texas government agency revealed that the Harris County Jail is under-staffed, which inspectors believed contributed to more than 1,000 staff members that had been assaulted by inmates in by late 2021. In 2017, there were only 46 reports of inmates assaulting staff members, according to the Deputies Union. In December 2021 it was reported that there have already been 1,265 staff assaults in the year. *"Minimal staffing has a direct impact on the ability to provide a safe and secure environment for inmates and jail staff in areas such as*

*enforcing inmate rules, ensuring inmates' clean housing areas provide for sufficient staff to support housing officers, and has possibly contributed to an increase in inmate-on-inmate assaults and inmate-on-staff assaults,"* the Texas agency report reads. Even during the Texas agency inspection inspectors feared for their safety after interacting with some inmates. According to the report, all inmates should be accounted for by face-to-face checks, no less than once every hour. Inmates who are assaultive, potentially suicidal, or have any other concerning behaviors should be checked every 30 minutes. But, inspectors reported this isn't happening. Instead, some face-to-face observations happen between 90 to 144 minutes between rounds. The report said in some instances, *officers say they are just too short-staffed.* The Jail is supposed to have one officer to every 48 inmates. According to the inspection report, the way the Jail was meeting this ratio was troubling. The Jail is using supervisors and essential workers (e.g. janitors) to address housing unit assignments, taking them away from their jobs to meet the ratio. Furthermore, there is not one person for every 48 inmates at all times.

12. State Senator John Whitmire said in 2021 a state take-over of the Harris County Jail could be an option: "Consider all options, including state intervention, bringing constables, DPS."

13. On October 10, 2021 Fred, although having never been arrested in his life, was arrested for allegedly "exhibiting [] a knife." No one was injured. Fred was

6

placed in the Harris County jail. Based upon the case facts, it is unlikely Fred would ever have been convicted.

14. Due to Fred's Jail intake evaluation and Harris County records it was immediately known Fred was severely intellectually disabled and mentally ill and in need of special care. Additionally, October 11, 2021 a magistrate judge found, and put in Fred's record, that Fred "is a person with mental illness or intellectual disability."

15. On October 12, 2021 the Hon. Kelli Johnson (Judge Johnson) of the 178th District Court of Harris County, Texas found Fred indigent and assigned Fred a court-appointed lawyer for his defense. October 21, 2022 his court appointed lawyer filed a motion for Fred to undergo psychiatric examination for competency due to signs of mental illness such as talking to an imaginary person and family history of schizophrenia and other mental health history. October 28, 2022 Judge Johnson ordered Fred to undergo psychiatric examination for competency.

16. When Fred was in the Jail so was the extremely violent 240 pound Michael Paul Ownby (Ownby).

17. October 25, 2021 Ownby was convicted and sentenced to prison for felony Continuous Violence Against the Family. **Exhibit 2.**

18. October 27, 2021 while in the Jail Ownby viciously attacked and injured a Jail detention officer. **Exhibit 3.**

19. Due the extreme danger posed by Ownby his wristband clearly indicated the danger requiring jailer escort.

20. On October 29, 2021, as on many days before, at around 11 PM the Jail did not have the staff to perform all the duties necessary for safety including keeping extremely violent inmates like Ownby away from much weaker smaller inmates like Fred and anyone else, to watch inmates in cells for assaultive behavior, and to intervene in inmate-on-inmate assaults. As a result Jail staff put Ownby and Fred in the same holding cell and without appropriate oversight.

21. In the cell Ownby knocked Fred to the concrete floor and began smashing Fred's head on the concrete. **Exhibit 4,** Ownby murder charge.

22. Ownby kicked Fred in the head as he lay on the concrete floor. *Id.*

23. Ownby stabbed Fred with a weapon made from a sharpened utensil. *Id.*

24. As there was not enough Jail staff, when detention officers eventually showed up Fred was near death.

25. Fred did not instigate a fight with Ownby.

26. Fred was taken to Ben Taub hospital and put on life support. Fred was declared brain dead. Fred was kept on life support so his organs could be donated and died within a few days of arriving at Ben Taub. Mother Dallas Garcia has suffered immensely since Fred's death.

27. There is a video of the killing of Fred but it is currently unavailable to the Plaintiff as are the Jail records of Fred Harris under the Texas Public Information Act (TPIA).

28. The autopsy report has been requested but is currently not available under the TPIA.

29. The Texas Rangers are conducting an investigation which includes witness statements, videos, and other evidence, however, their report is not currently available. The Harris County District Attorney's office is prosecuting Ownby for murder but none of those records are available at least while the criminal case pends.

30. Harris County does not require and does not have insurance for Constitutional and civil right violations of their employees including deputies, jailers and others and including for incidents such as what happened to Fred Harris. Harris County has never required its officers to obtain other means to satisfy a judgment against them such as a bond, surety, or other means. Harris County, unlike multiple other municipalities in Texas and throughout the United States, has no requirement to satisfy judgments entered against its jailers, deputies, or other employees for violations of civil rights, including failure to protect inmates. It is the official policy, or unofficial custom of Harris County Sheriff's deputies, jailers, and other employees to not obtain such insurance or indemnification so that they remain "judgment proof" in the event of litigation. This actively discourages litigants and

attorneys from filing lawsuits because there is often no ability to recover just compensation for violations of constitutional rights such as the failure to protect or the for the violations that happened to Fred Harris. Because they are not held accountable for Constitutional and civil rights violations, this creates an official policy, or unofficial custom, of normalizing the Constitutional and civil rights violations by Sheriffs, deputies, jailers, and other employees. The Commissioners Court, and Sheriffs know it is extremely unlikely they will be sued in most instances and even if they are sued many litigants dismiss their cases or settle for small amounts. This was a moving force of the violence on Fred as stated in this complaint.

## AMERICANS WITH DISABILITIES ACT

31. Harris County including the Sheriff's office and the Jail have been, and are, recipients of federal funds, and thus covered by the mandate of the Rehabilitation Act. The Rehabilitation Act requires recipients of federal monies to reasonably accommodate persons with disabilities in their facilities, program activities, and services and reasonably modify such facilities, services and programs to accomplish this purpose. 29 U.S.C. § 794 (2008).

32. Further, Title II of the ADA, and the Americans with Disabilities Act Amendments Act apply to Harris County, The Sheriff's office and the Jail have the same mandate as the Rehabilitation Act. 42 U.S.C. § 12131 *et seq.* (2008).

33. The Harris County jail is a facility, and its operation comprises a program and service, for Rehabilitation Act, ADA, and ADAAA purposes. Fred was otherwise qualified to participate in the programs and services at the Harris County jail provided by Harris County, Texas and the HCSO's office.

34. For purposes of the ADA, ADA Amendments Act, and Rehabilitation Act, Fred was a qualified individual regarded as having a physiological impairment that substantially limited one or more of his major life activities. Defendant Harris County and knew Fred Harris suffered from extreme mental intellectual disability, IQ of 62, schizophrenia and/or it's precursors, and other mental illness. These conditions, alone or in combination, made Fred a qualified individual with a disability. Despite this knowledge, Harris County's and the HCSO officers and employees intentionally discriminated against him, under the meaning of the ADA, ADAAA and Rehabilitation Act, by failing and refusing to protect him from Ownby who took his life and failing to make reasonable accommodations to safely house Fred and/or move him and Ownby about the jail with the proper escorts and to observe Fred and Ownby when they are accessible to each other and other inmates and employees.

35. As alleged above and herein, Harris County and the HCSO failed and refused to reasonably accommodate Fred's disability while in custody, in violation

of the ADA, ADAAA and Rehabilitation Act. That failure and refusal caused his suffering and death.

37. As alleged above, Harris County and the HCSO failed, and refused to reasonably modify its facilities, services, accommodations, and programs to reasonably accommodate Fred's disability. These failures and refusals caused his death. Due to his injury and death Fred was not able to access the work programs, mental healthcare programs, education programs, commissary, court appointed or public defender lawyers programs, as well as any other program or service offered by Harris County.

37. Among other things, Harris County and the HCSO failed to:
   a. Provide safe housing;
   b. Provide safe movement from one part of the jail to another;
   c. Provide proper medication;
   d. Provide protection from dangerous jail inmates;
   e. Provide oversight in case of danger from other inmates;
   f. Provide medical treatment;

38. As Fred died as a direct and proximate result of Harris County and the HCSO's intentional discrimination against him, Plaintiff is entitled to all damages allowed by law.

## 42 U.S.C. SECTION 1983 AGAINST HARRIS COUNTY

39. The Civil Rights Act, codified as 42 U.S.C. § 1983, provides as follows:

*Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges, immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. § 1983.*

40. The 4th Amendment to the United States Constitution provides:

*The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.*

41. The 5th Amendment to the United States Constitution provides:

*No person shall be [] deprived of life, liberty, or property, without due process of law;*

42. The 14th Amendment to the United States Constitution provides:

*No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.*

43. Harris County through its officials and employees engaged in deliberate and outrageous invasion of Plaintiff's rights violation of Plaintiffs' rights under the

Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. Plaintiff re-alleges and incorporate all allegations of this Complaint as if fully set forth herein.

44. Harris County and the HCSO by their acts and omissions alleged above, under color of law and pursuant to the customs, practices and policies of Harris County, Texas, deprived Fred of his rights thereby violating the Fourth Amendment to be secure in their persons, the Fifth and Fourteenth Amendments right not to be deprived of life and liberty without due process and equal protection under the Due Process and Equal Protection Clauses of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983.

45. As a direct and proximate result of Defendants' acts, which were so outrageous in character and extreme in degree to be utterly intolerable in a civilized community, Plaintiff suffered severe emotional distress and was injured and damaged thereby.

46. As shown below, the Defendant(s) actions were part of a policy and practice condoned by Harris County, Texas.

47. In addition, Harris County (and its governmental branch, Harris County Sheriff's Office), including its officials and employees in an official capacity engaged in a policy and practice of deliberate indifference to the care and custody of citizens and detainees that resulted in the injury and death of Fred.

48. In addition, and in the alternative, Harris County gave inadequate training to civilian and officer personnel, including but not limited to the jailers, deputies, and officials referenced herein and failed to supervise when detentions occurred.

49. Plaintiff contends that policies, procedures, practices and customs of Harris County and the HCSO including but not limited to the deputies referenced herein (alone and in concert and/or individually) put Fred in an inherently dangerous situation and violated his rights under the First, Fourth and Fourteenth Amendments to the Constitution of the United States for which Plaintiff seeks recovery.

50. Plaintiff contends that the failures to train and supervise staff regarding the policies, procedures, practices and customs of Harris County and the deputies put Plaintiff and potentially others in a dangerous situation and violated their rights under the First, Fourth and Fourteenth Amendments to the Constitution of the United States for which Plaintiff seeks recovery.

51. During the relevant time period contemplated by this cause of action, Harris County and the HCSO, including but not limited to the deputies, jailers and other officials in an official capacity failed to follow state and federal laws, federal and state regulations with jail inmates especially Fred and Ownby.

52. During the relevant time contemplated by this cause of action, Harris County and the HCSO, including but not limited to the deputies, jailers and other

15

officials in an official capacity, in the alternative or in addition failed to follow their own written policies and procedures and those of the State of Texas and other authorities on standards of care, and protection of jail inmates.

53. Facts at the time of filing this Complaint supporting each of the elements of a § 1983 claim against Harris County and the HCSO are found above and applicable to all claims, but may be summarized as follows:

Failed to properly train, hire, control, discipline, including firing, and supervise employees;

Promulgated, condoned, or showed indifference to improper policies or customs;

Continued such practices of improper policies or customs as to constitute custom representing policy;

Failing to investigate claims of assault, excessive force and other violations;

Failure to investigate citizen complaints if a charge is pending;

Failure to hire enough guards and other staff;

Failure to fund the jail with enough funds;

Failure to keep the jail at the appropriate number of inmates to keep the inmates safe;

Failure to provide body worn camera and dash camera videos to the State and inmate criminal defense attorneys to decrease the number of inmates in the jail;

54. These actions by Harris County and the HCSO subjected Fred to confinement with constitutionally inadequate safety protections such as:

Understaffing and underfunding the Jail;

Staffing the Jail with officers with no (or insufficient) training, oversight, supervision, or discipline;

Not housing inmates with violent inmates;

Not housing small vulnerable inmates with inmates who may injure them;

Not housing inmates together without oversight;

Not providing escorts for inmates deemed to require escorts; and

Not providing adequate mental health care.

## DAMAGES

55. Based upon the operative facts plead above, such acts and omissions rise to the level of deliberate indifference and conscious indifference constituting a violation of the First, Fifth, Fourth and Fourteenth Amendments of the Constitution of the United States for which Plaintiff seeks recovery as well as the ADA and Rehabilitation Act and their amendments.

56. Each and every, all and singular of the foregoing acts and omissions, on the part of Defendants, taken separately and/or collectively, jointly, and severally, constitute a direct and proximate cause of the injuries and damages set forth herein. As a direct, proximate, and foreseeable result of Defendants'

unlawful conduct, Plaintiff has suffered, and will continue to suffer damages in an amount to be proved at trial.

57. As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer, generally physical, mental, and psychological damages in the form of extreme and enduring worry, grief, suffering, pain, humiliation, embarrassment, mental anguish, and emotional distress in amounts within the jurisdictional limits of this Court, to be proved at trial.

58. Plaintiff is entitled to reasonable attorneys' fees and costs of suit as provided for by 42 U.S.C. § 1988(b) and the ADA and Rehabilitation Act.

## ESTATE ACTION

59. Plaintiff is or will be the representative of the estate of Fred Harris who suffered immensely in physical and psychological pain prior to his death and for which the Estate is due damages as well as his funeral expenses.

## JURY DEMAND

60. Pursuant to Federal Rule of Civil Procedure 38(b) Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court:

A. Enter a declaratory judgment that the policies, practices, acts, and omissions complained of herein violated Fred's and Plaintiff's rights;

B. Award compensatory damages for Plaintiff against Defendants, jointly and severally;

C. Award reasonable attorneys' fees and costs and all litigation expenses, pursuant to federal and state law, as noted against Defendants, jointly and severally pursuant to 48 U.S.C. § 1988;

D. Award pre- and post-judgement interest; and

E. Award costs of court;

F. Retain jurisdiction over Defendant Harris County such time that the Court is satisfied that Defendants' unlawful policies, practices, acts, and omissions no longer exist and will not recur; and,

G. Grant such other and further relief as appears reasonable and just, to which, Plaintiff shows herself entitled.

Respectfully Submitted,

/s/ *Randall L. Kallinen*
Randall L. Kallinen
KALLINEN LAW PLLC
State Bar of Texas No. 00790995
U.S. So. Dist. of Texas Bar No.: 19417
511 Broadway Street
Houston, Texas 77012
Telephone: 713/320-3785
FAX: 713/893-6737
E-mail: AttorneyKallinen@aol.com

Alexander C. Johnson
KALLINEN LAW PLLC
State of Texas Bar No. 24123583
U.S. So. Dist. of Texas Bar No.: 3679181
511 Broadway Street
Houston, Texas 77012
Telephone: 573/340-3316
Fax: 713/893-6737
Email: alex@acj.legal

## **CERTIFICATE OF SERVICE**

I certify I have served this filing on this 31st day of October 2022, by filing with the Court's ECF System.

/s/ *Randall L. Kallinen*
Randall L. Kallinen