IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **Dallas Garcia,** *Individually and as a representative of the Estate of* **Fred Harris,** *deceased*,<br>*Plaintiff,*<br><br>versus<br><br>**Harris County, Texas;** *et al*,<br>*Defendants.* | Civil Action No.<br> 4:22-cv-3093<br>(Jury Trial) |

## PLAINTIFF'S OMNIBUS RESPONSE TO

## DEFENDANTS' MOTIONS TO DISMISS

TO THE HONORABLE ALFRED H. BENNETT:

Now comes Plaintiff Dallas Garcia, responding to Defendant Ed Gonzalez's, Defendants Hildago and Garcia's, and Defendant Ramsey's motions to dismiss. Docs. 42, 43, 46. Plaintiff will respectfully show the Court as follows:

**Standard of Review**

A court may only dismiss a complaint as a matter of law where the plaintiff fails to state a claim upon which relief may be granted. Fed R. Civ. P. 12(b)(6). A complaint must survive when it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). The Court must accept the plaintiff's well-pled facts as true, and view them in the light most favorable to the plaintiff, making reasonable inferences and resolving contested facts and factual ambiguities in the plaintiff's

favor. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (citations omitted). Plausibility under this standard is unrelated to probability, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The inquiry is generally limited to the contents of the pleading and its attachments. *Brand Coupon Network LLC v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). Read in combination with Federal Rule of Civil Procedure 8(a)(2), "[s]pecific facts are not necessary," as the pleadings need only provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (internal citations omitted).

Put differently, "[a] claim may *not* be dismissed unless it appears *certain* that the plaintiff cannot prove *any* set of facts that would entitle [them] to legal relief." *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 251 (5th Cir. 2006) (internal citation omitted) (emphasis added). As a result, motions to dismiss are "viewed with disfavor" and "rarely granted" in this Circuit. *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (internal quotations and citations omitted).

In cases like this, where facts related to municipal liability are alleged, the Court should give plaintiffs the benefit of the doubt where possible, as they have not yet had the opportunity for discovery. *Lipman v. Budish*, 974 F.3d 726, 748 (6th Cir. 2020) ("At the motion-to-dismiss stage, without the benefit of discovery, these facts are enough to draw the reasonable inference that this custom was widespread . . . and known to policymakers."); *Thompson v. City of Galveston*, 800 F. Supp. 2d 826, 844–45 (S.D. Tex. 2011). Indeed, the Supreme Court has reiterated time and again that § 1983 cases are not subject to any kind of heightened pleading standard, as long as the facts alleged make a constitutional claim. *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam) (citations omitted).

**Argument**

1. **The Fifth Circuit unequivocally allows parents to bring civil rights claims on behalf of their deceased children, so Plaintiff definitively has standing.**

All Defendants argue that Plaintiff somehow lacks standing to bring a civil rights claim on behalf of her deceased son, contrary to clear and long-standing Fifth Circuit precedent and Texas law. *See, e.g.* Doc. 32 § II.C. Its two main supporting cases are both district court cases that Defendants cherry-picked quotes from, even though the cases themselves tell a different story. In *Polk*, the Northern District of Texas determined that no claims accrued to a *living* child's grandmother, and that only certain claims accrued to the child's mother. *Polk v. City of Corsicana*, Nos. 3:05-CV-0861-G (BH), 3:05-CV-0894-G), 2006 U.S. Dist. LEXIS 2719, at *19-20 (N.D. Tex. Jan. 24, 2006). It specifically noted that civil rights claims "may descend to a relative under appropriate circumstances." *Id.* (internal citations and quotations omitted).

Because Fred Harris is deceased, the relevant question is whether the case may descend to his mother, which the 5th Circuit answers as a clear and unequivocal *yes*. Defendant's second case makes that much clear. In *Hobart*, this Court explained thus:

> The Fifth Circuit has clearly held that those "within the class of people entitled to recover under Texas law for the wrongful death of a child" are eligible "to recover under § 1983 for her own injuries resulting from the deprivation of her son's constitutional rights." *Rhyne v. Henderson County*, 973 F.2d 386, 391 (5th Cir. 1992). Texas law makes clear that the parents of the deceased are eligible beneficiaries in a wrongful death action. Tex. Civ. Prac. & Rem. Code § 71.004(a) (Vernon 2008); *see Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010). Accordingly, the Court finds that the Hobarts have standing to bring a wrongful death claim on behalf of themselves under Section 1983.

*Hobart v. City of Stafford*, 784 F. Supp. 2d 732, 745 (S.D. Tex. 2011).

In 2016, the 5th Circuit itself outlined its clear history and position on the matter thus:

> In *Brazier*, for example, we held that § 1988 incorporated Georgia's wrongful-death statute, thereby conferring federal-question jurisdiction over a widow's claims that officers had killed her husband. Similarly, in *Grandstaff*, the Texas wrongful-death statute allowed a father to assert § 1983 claims based on his son's wrongful death. Then, in *Rhyne*, we allowed a prisoner's mother to sue the county and its sheriff for failing to provide reasonable medical care in violation of § 1983. Specifically, after noting her capacity to sue under Texas's wrongful-death statute, we concluded that our decisions allow recovery by Rhyne for her injury caused by the state's deprivation of her son's constitutionally secured liberty interests.

*Rodgers v. Lancaster Police & Fire Dep't*, 819 F.3d 205, 209 (5th Cir. 2016) (internal citations and quotations omitted) (cleaned up).

The 5th Circuit in *Valle* also addressed sheer speculation with respect to the decedent's estate and the possible existence of children — similar to Defendants' bare and euphemistic allegations here, Doc. 32 pp. 4–5 — by explaining that

> Texas law provides that when a person dies intestate, as Esparza did, the decedent's estate immediately vests in his heirs at law, subject to the payment of any debts of the estate. Title to any estate passes equally to the decedent's parents in the absence of a spouse or children. . . . Even if Esparza did have a son, a point that the parties contest, the Valles still have standing under Texas law to recover wrongful death damages on behalf of themselves and all others entitled to recover under the wrongful death statute. The City's conclusory allegation that Esparza's estate requires administration is insufficient.

*Valle v. City of Houton.*, 613 F.3d 536, 541 (5th Cir. 2010) (internal citations omitted).

As a result, Plaintiff has the clear right as Frank's mother and only heir at law to bring this civil rights claim.

Also, the Estate of Fred Joseph Harris V, Deceased, has been formed and Plaintiff has applied for administrator. **Exhibit 1.** There have been a few matters slowing the probate action but it is moving forward on Plaintiff's efforts.

**2. Plaintiff has stated more than plausible claims against all four Defendants.**

Defendants may be liable as policymakers where they "affirmatively participate[] in acts which cause a constitutional deprivation, *or implement[] an unconstitutional policy* that causally result[s] in the plaintiff's injuries." *Casanova v. City of Brookshire*, 119 F. Supp. 2d 639, 660 (S.D. Tex. 2000) (citing *Baker v. Putnal*, 75 F.3d 190, 199 (5th Cir. 1996)) (emphasis added).

"As a theoretical backdrop, the doctrine of qualified immunity attempts to balance two competing societal interests: 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Joseph v. Bartlett*, 981 F.3d 319, 328 (5th Cir. 2020)(quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The affirmative defense of qualified immunity does not apply where a public official's conduct "violate[s] clearly established . . . constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

At the outset, the Plaintiff first must plead facts that plausibly make out a constitutional injury. *Joseph*, 981 F.3d at 330. To defeat qualified immunity, however, "the *plaintiff's version* of those disputed facts must also constitute a violation of clearly established law." *Id.* (emphasis added). In order to be clearly established, "the unlawfulness of the challenged conduct must be beyond debate[, which] leaves the rare possibility [of] an obvious case . . . [where] the unlawfulness of the challenged conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Id.* (quotations, citations, and alterations omitted). Generally though, qualified immunity "requires the plaintiff to identify a case—usually, a body of relevant case law—in which an officer acting under similar circumstances" was held liable, and the cases cited need not be *directly* on point. *Id.* (quotations, citations, and alterations omitted).

In cases where a specific deficiency is known, the absence of or failure to adopt an appropriate policy can be considered a policy in the same way that an affirmative policy is, especially when policymakers are aware of the need for a policy. *J.K.J. v. Polk County*, 960 F.3d 367, 370, 375–76, 384 (7th Cir. 2020) (en banc) (internal citations omitted); *Glisson v. Indiana Department of Corrections*, 849 F.3d 372, 378–80, 382 (7th Cir. 2017) (internal citations omitted). Notably, the Seventh Circuit in *Glisson* looked at Indiana Department of Corrections' guidelines as evidence that a jail medical provider had the knowledge of the need for a policy but chose not to act. *Glisson*, 849 F.3d at 380. It went on to note that "There is no magic number of injuries that must occur before its failure to act can be considered deliberately indifferent." *See Woodward v. Corr. Med. Servs.*, 368 F.3d 917, 929 (7th Cir. 2004) ("CMS does not get a 'one free suicide' pass."). *Glisson*, 849 F.3d at 382. More strikingly in the context of the case at bar, the *en banc* Seventh Circuit in *J.K.J.* looked at the risk of sexual assault in a county jail, despite policies against such conduct, and determined that because it took no action with respect to detection, prevention, or training, that a jury was reasonable in finding liability. *J.K.J.*, 960 F.3d at 370, 384.

Here, Plaintiff pleads that these policymakers for Harris County may be held liable under for their policy of severely understaffing County jails to the point that they could not meet the supervision and operational needs the County identified—a problem so widespread that HCSO's policymaker Ed Gonzalez even made public statements admitting as much. Doc. 31 ¶¶ 10–14, Ex. 1.[1] Put differently, all of the County's policymakers — Gonzalez, Hildago, Garcia, and Ramsey included — were specifically aware of the problem.

---

[1] Note that Defendant attempts to write off most of Plaintiff's factual pleadings as "conclusory," without even bothering to explain how, for example, pleading the fact that Sheriff Gonzalez acknowledged the problem in the press (complete with a link to the article) is a legal conclusion masquerading as a factual assertion. Moreover, much is made of Plaintiff's inclusion of "hearsay" — this argument is a red herring that notably is only supported by citation to summary judgment decisions where evidentiary rules are actually relevant. *See, e.g.,* Doc. 42 § II.C.

Doc. 31 ¶¶ 10–14. As a result, neither the County nor its policymakers cannot be given a "one free murder pass" since they knew of a problem that has existed for years, knew the consequences of the problem, but did nothing to address the problem anyway. As a result, Defendants can more than plausibly be held liable for violating the security of Fred's person under the Fourth Amendment, and for violating his due process rights under the Fifth and Fourteenth Amendments. Moreover, as Plaintiff specifically alleged in the complaint, more factual material exists to further corroborate these allegations, but that material is not currently available to Plaintiff, which should not be held against her at this stage. Doc. 31 ¶¶ 32–33; *see also* § Standard of Review, *supra*.

These Defendants are liable in their own ways. First, as the policymaker for the HCSO and its detention staff, Defendant Gonzalez may be held liable both for his lack of policies to adequately address safety concerns in the face of understaffed jails, Doc. 31 ¶¶ 10–14, and also may be held liable for his affirmative policy of failing to insure or indemnify HCSO deputies and jailers in order to make them judgment-proof. Doc. 31 ¶ 33. These policies led directly to jailers leaving Ownby alone with Harris despite Harris's protected status and Ownby's known violent tendencies, then proceeding to stand by and do nothing to prevent the brutal murder because they believed they were able to ignore the precautions they should have taken and get away with it. Doc. 31 ¶¶ 16–31. As the County's policymaker with respect to its purse strings, the Commissioners Hildago, Garcia, and Ramsey may also be held liable for repeatedly hearing of the understaffing problem in their jails, fielding requests for increased funds to address the problem, and failing to do so. Doc. 31 ¶¶ 10–14. Their deliberate inaction may be considered an affirmative policy to understaff County jails. *See Glisson* and *J.K.J.*, *supra*. As described in great detail, understaffing directly caused Ownby to be placed in a holding cell with Harris, and by extension, his

murder. Doc. 31 ¶¶ 10–32. All of these policies are obviously unconstitutional, and no reasonable policymaker would have believed they were acceptable.

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests that Defendants' motions to dismiss be **DENIED**.

Respectfully submitted,

*/s/Randall L. Kallinen*
Randall L. Kallinen
Kallinen Law PLLC
State Bar of Texas
    Bar No. 00790995
U.S. Southern District of Texas
    Federal ID No. 19417
511 Broadway Street
Houston, Texas 77012
Telephone: 713.320.3785
Fax: 713.893.6737
Email: AttorneyKallinen@aol.com
**Attorney for Plaintiff**

*/s/Alexander C. Johnson*
Alexander C. Johnson
Kallinen Law PLLC
State Bar of Texas
    Bar No. 24123583
U.S. Southern District of Texas
    Federal ID No. 3679181
511 Broadway Street
Houston, Texas 77012
Telephone: 573.340.3316
Fax: 713.893.6737
Email: alex@acj.legal
**Attorney for Plaintiff**

**Certificate of Service**

I certify that on August 7th, 2023, I have served a true and correct copy of the foregoing document that was delivered by the ECF in accordance with the Federal Rules of Civil Procedure to all ECF notice attorneys of record.

*/s/Randall L. Kallinen*
Randall L. Kallinen