United States District Court
Southern District of Texas
**ENTERED**
March 29, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DALLAS GARCIA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:22-CV-03093 |
| | § | |
| HARRIS COUNTY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## **ORDER**

Before the Court are Plaintiff Dallas Garcia's Second Amended Complaint (Doc. #31) and four Motions to Dismiss filed by Defendant Harris County (Doc. #32), Defendants Sheriff Ed Gonzalez and the Harris County Sheriff's Office (Doc. #42), Defendants County Judge Lina Hildago and County Commissioner Adrian Garcia (Doc. #43), and Defendant County Commissioner Tom R. Ramsey (Doc. #46). The Court is also in receipt of Plaintiff's Responses thereto (Doc. Nos. 35, 48), and the Defendants' Replies (Doc. Nos. 39, 49). Furthermore, the Court considers Plaintiff's Motion for Extension of Time to Serve Summons (Doc. #50) and Plaintiff's Motion for Leave to Amend Complaint (Doc. #53), both of which are fully briefed (Doc. Nos. 52, 58, 59). Having considered the parties' arguments and the applicable legal authorities, the Court grants the Motions to Dismiss filed by Defendants Harris County (Doc. #32), Sheriff Ed Gonzalez and the Harris County Sheriff's Office (Doc. #42), County Judge Lina Hildago and County Commissioner Adrian Garcia (Doc. #43), and County Commissioner Tom R. Ramsey (Doc. #46); and grants in part Plaintiff's Motion for Extension of Time to Serve Summons (Doc. #50) and Plaintiff's Motion for Leave to Amend Complaint (Doc. #53).

I.      **Background**

On September 11, 2022, Plaintiff Dallas Garcia ("Plaintiff") filed this lawsuit against Defendants Harris County and the Harris County Sheriff's Office, alleging that both Defendants violated the Americans with Disabilities Act (the "ADA") and that Harris County violated 42 U.S.C. § 1983 ("Section 1983") by violating her Fourth, Fifth, and Fourteenth Amendment rights. Doc. #1. Plaintiff's claims are brought individually and as a representative of the estate of Fred Harris ("Harris"), her deceased son. *Id.* Plaintiff first amended her Complaint on October 31, 2022 (Doc. #9), and again on March 31, 2023 (Doc. #31). In her Second Amended Complaint, the operative pleading, Plaintiff added Defendants Deborah Washington, Nicolas Guzman, Darius Brightman, Logan Shorter, Domique Roberson, Demitre Johnson, Sheriff Ed Gonzalez, County Judge Lina Hildago, Rodney Ellis, Jack Cagle, County Commissioner Adrian Garcia, and County Commissioner Tom R. Ramsey. Doc. #31.

On October 10, 2021, Harris was arrested for allegedly exhibiting a knife and was placed in a Harris County jail. Plaintiff alleges that during his intake evaluation, it became immediately known to officers that Harris was "severely intellectually disabled and mentally ill and in need of special care." *Id.* at 7. Plaintiff further contends that Harris' intellectual disabilities and mental illness were stated in Harris County's records and in the orders of 178th District Court Judge Kelli Johnson requiring Plaintiff to undergo a psychiatric examination to determine his competency. *Id.* On October 29, Harris was placed in the same cell as inmate Michael Ownby ("Ownby"). *Id.* at 9. Ownby had a violent history, including a felony conviction for violence against a family member and he previously attacked a detention officer. *Id.* at 8. Plaintiff alleges that Ownby's history was known to officers, as demonstrated by the wristband that Ownby was required to wear that indicated that he posed an "extreme danger" and required a "jailer escort." *Id.* at 9. As a

matter of fact, Plaintiff asserts that a couple of hours before Harris was placed in the cell with Ownby, Ownby assaulted another inmate and placed him in a chokehold because he wanted a single cell. *Id.* Ownby was then escorted to another holding cell and his handcuffs were removed. *Id.* A couple of hours later, Harris was placed in the holding cell with Ownby. Ownby viciously slammed and kicked Harris' head. *Id.* Ownby also stabbed Harris with a sharpened utensil. *Id.* at 11. Plaintiff claims that Detention Officers Darius Brightman, Domique Roberson, and Logan Shorter saw Ownby attacking Harris but did not enter the cell to stop the attack. *Id.* at 10. Further, Plaintiff claims that Detention Officers Demitre Johnson and Heaven Ratliff knew that Ownby attacked another inmate earlier that evening and should not have placed Harris in the same cell as him. *Id.* Harris succumbed to his injuries a few days after the attack. *Id.* at 11.

    Plaintiff claims that while Harris was detained, the jail was understaffed, which resulted in inadequate supervision to prevent Harris' assault. *Id.* She claims that the jail's policy, practices, customs, and officers' lack of training contributed to Harris' death. *Id.* Only Defendants Harris County, Sheriff Ed Gonzalez ("Gonzalez"), County Judge Lina Hildago ("Hildago"), and County Commissioners Adrian Garcia ("Garcia") and Tom R. Ramsey ("Ramsey") have been properly served. Doc. #6. These Defendants filed the Motions to Dismiss that are pending before the Court. Doc. Nos. 32, 42, 43, 46. The Harris County Sheriff's Office ("HCSO," collectively with Harris County, Gonzalez, Hildago, Garcia, and Ramsey, "Defendants") has not been properly served but jointly moved with Gonzalez to dismiss Plaintiff's claims.[1] Doc. #42. The remaining Defendants—Deborah Washington, Nicolas Guzman, Darius Brightman, Logan Shorter, Domique Roberson, Demitre Johnson, Rodney Ellis, and Jack Cagle—have not been served (hereinafter, the

---

[1] The Court notes that HCSO did not raise any arguments regarding improper service in its joint Motion to Dismiss. Doc. #42. Accordingly, the Court will not take any further action in that regard.

"Unserved Defendants"). Thus, on August 20, 2023, Plaintiff filed a Motion for Extension of Time to Serve Summons. Doc. #50. Approximately a month later, on September 21, Plaintiff moved for leave to file a third amended complaint. Doc. #53. The Court will consider the motions in the order in which they were filed.

## II. Legal Standards

### a. Federal Rule of Civil Procedure 12(b)(1)

A district court must dismiss a case when the plaintiff fails to establish subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). "When a party files multiple Rule 12 motions, [courts] must consider the Rule 12(b)(1) jurisdictional attack before considering the Rule 12(b)(6) merits challenge. The party responding to the 12(b)(1) motion bears the burden of proof that subject-matter jurisdiction exists." *Wilson v. Hous. Cmty. Coll. Sys.*, 955 F.3d 490, 494–95 (5th Cir. 2020), *rev'd on other grounds*, *Hous. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468 (2022). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005). When determining its jurisdiction, the court may rely on the complaint as well as undisputed facts in the record and the court's own resolution of disputed facts. *St. Tammany Parish, ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009).

### b. Federal Rule of Civil Procedure 12(b)(6)

A complaint may be dismissed for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The pleading standard is set forth in Federal Rule of Civil Procedure 8(a)(2), requiring "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (1955). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the

defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

To survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Plausibility exists when the complaint includes factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The complaint must show more than a "sheer possibility that the defendant has acted unlawfully," and pleading facts that are "'merely consistent with' a defendant's liability" will not suffice. *Id.*; *see Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). Courts accept "the well-pleaded factual allegations in the complaint as true" but do "not credit conclusory allegations or allegations that merely restate the legal elements of a claim." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016).

### III. Analysis

#### a. Plaintiff's Standing

Pursuant to Federal Rule of Civil Procedure 12(b)(1), Defendants assert that the Court lacks subject matter jurisdiction because Plaintiff does not have jurisdictional standing in her individual capacity or as the representative of Harris' estate. Doc. #32 at 9–11; Doc. #42 at 4–6; Doc. #43 at 4–6; Doc. #46 at 4–6. The Court considers Plaintiff's standing in each representative capacity in turn.

#### 1. Individual Capacity

As to Plaintiff's standing in her individual capacity, Defendants assert that her Section 1983 claim is "based solely on the alleged violation of her son's constitutional rights" and is not based on any violation of her personal rights. Doc. #32 at 10; Doc. #42 at 5; Doc. #43 at 4; Doc.

#46 at 4. In support of their contention, Defendants misquote *Hobart v. City of Stafford* as stating that "all persons who claim a deprivation of constitutional rights are required to prove some violation of their personal rights to have standing." Doc. #32 at 10; Doc. #42 at 5; Doc. #43 at 4; Doc. #46 at 4 (citing 784 F. Supp. 2d 732, 745 (S.D. Tex. 2011)). However, *Hobart* held that the plaintiffs, the parents of a man who was killed by Stafford Police Department officers, had standing to bring a wrongful death claim under Section 1983 in their individual capacities. *Hobart*, 784 F. Supp. 2d at 745. The court stated,

> However, Plaintiffs do claim deprivation of their individual constitutional rights, for injuries suffered as a result of the wrongful death of their son. The Fifth Circuit has clearly held that those "within the class of people entitled to recover under Texas law for the wrongful death of a child" are eligible "to recover under [Section] 1983 for her own injuries resulting from the deprivation of her son's constitutional rights." Texas law makes clear that the parents of the deceased are eligible beneficiaries in a wrongful death action.

*Id.* (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 391 (5th Cir. 1992), then citing TEX. CIV. PRAC. & REM. CODE § 71.004(a) (Vernon 2008), and *Valle v. City of Hous.*, 613 F.3d 536, 541 (5th Cir. 2010)).

Here, like in *Hobart*, Plaintiff claims her individual constitutional rights have been violated because of the wrongful death of her son. *See* Doc. #31 at 15, 17. Accordingly, because Plaintiff is within the class of people entitled to recover under Texas law for the wrongful death of a child, she may also recover under Section 1983. As such, Plaintiff has standing in her individual capacity to bring her Section 1983 claim.

### 2.     As a Representative of Harris' Estate

Defendants also contend that Plaintiff lacks standing to assert claims as a representative of Harris' estate because an administration of his estate is currently pending in the probate court. Doc. #32 at 11, Doc. #42 at 6, Doc. #43 at 5, Doc. #46 at 5, Doc. #49 at 1. "Texas authorizes survival actions by the estate's personal representatives and heirs at law." *Rodgers v. Lancaster*

6

*Police & Fire Dep't*, 819 F.3d 205, 212 (5th Cir. 2016). "Heirs at law can maintain a survival suit during the four-year period the law allows for instituting administration proceedings if they allege and prove that there is no administration pending and none necessary." *Shepherd v Ledford*, 962 S.W.2d 28, 31–32 (Tex. 1998). Plaintiff must submit evidence demonstrating that an estate administration is neither pending nor necessary to sue as a representative of Harris' estate. *See Valle*, 613 F.3d at 541. In this case, it is undisputed that on April 4, 2023, Plaintiff filed an "Application to Determine Heirship" in the Harris County Probate Court No. 3. Doc. #32, Ex. 1. There is no evidence before the Court that the estate administration has been resolved. As such, Plaintiff lacks the capacity to sue Defendants as the representative of Harris' estate. *Cf. Valle*, 613 F.3d at 541.

    **b.**   **Plaintiff's Section 1983 Claims**

        **1.**   **Harris County**

Harris County contends that Plaintiff fails to plead sufficient facts to hold it liable under *Monell* for its allegedly inadequate policies, practices, customs, and officers' training. Doc. #32 at 12–15. Relying on Seventh Circuit cases, Plaintiff asserts that Harris County's failure to adopt an appropriate policy to address its understaffing can be a basis for its liability. Doc. #35 at 6–8.

"[M]unicipal liability under [S]ection 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001). "To proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Spiller v. City of Tex. City Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)). The policy at issue may be a custom that is

"a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984).

Plaintiff seems to assert that Harris County had a custom of understaffing its jails, which resulted in inadequate supervision of Ownby to prevent the assault on Harris. Doc. #31 at 4–7, 11; *see also* Doc. #35 at 7. It is debatable whether Plaintiff even met her burden of showing that understaffing in the jails qualifies as a custom. But even if the Court assumes that she did, she fails to plead sufficient facts that establish a relationship between the understaffing and the constitutional violations at issue here. Indeed, Plaintiff dedicates a few pages of her Second Amended Complaint outlining the allegedly pervasive understaffing in Harris County jails generally. *See* Doc. #31 at 4–7. But she fails to plead specific facts showing how understaffing contributed to Harris' death. In fact, Plaintiff alleges that three detention officers were present during the attack, so it is unclear what relationship the alleged understaffing has with the violations asserted in this case. *See* Doc. #31 at 10.

Plaintiff also suggests that Harris County failed to properly train officers to address inmate-on-inmate violence, asserting that "[d]etention officers do not check the classification status of inmates before moving them" and "[d]etention officers do not intervene when an inmate attacks another inmate." *Id.* Plaintiff also asserts that specific officers did not enter the cell to stop Ownby from attacking Harris. *Id.* "To prevail on a failure-to-train theory, [Plaintiff] must plead facts plausibly establishing, '(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Ratliff v. Aransas Cnty.*,

948 F.3d 281, 285 (5th Cir. 2020) (quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010)).

While Plaintiff states that Harris County failed to properly train its employees and makes some assertions regarding what detention officers do not do (i.e., check inmate classification statuses or intervene in inmate-on-inmate attacks), it is not clear from the face of the Second Amended Complaint if these allegations are based on a lack of training by Harris County. As the Court reads it, Plaintiff's assertions could also be understood to mean that these particular detention officers—Deborah Washington, Nicolas Guzman, Darius Brightman, Domique Roberson, Logan Shorter, Demitre Johnson, and Heaven Ratliff—did not check Ownby's classification status or intervene when Ownby attacked Harris, despite being trained to do so. As such, the Second Amended Complaint lacks sufficient specific facts regarding an allegedly inadequate training procedure to support Plaintiff's claim. Accordingly, Defendants' Motions to Dismiss are granted as to Plaintiff's *Monell* claims.

### 2. Harris County Sheriff's Office

HCSO contends that Plaintiff's claims against it must be dismissed because it is not a legal entity that can be sued. Doc. #42 at 2. "A plaintiff may not bring a civil rights action against a servient political agency or department unless such agency or department has a separate and distinct legal existence." *W.D.O. v. Harris Cnty. Sheriff Dep't*, No. H-05-2978, 2005 WL 8169263, at *1 (S.D. Tex. Dec. 5, 2005). "Under Texas law, county sheriff departments are not, as a general rule, considered to be legal entities capable of being sued." *Id.* "It is only where the enabling entity—the county, in the case of the sheriffs department—confers such authority upon servient agencies that courts may recognize their 'jural authority.'" *Id.* HCSO does not have a separate legal existence nor does it have jural authority to be sued. As such, Plaintiff's claims

against HCSO must be dismissed.

### 3. Gonzalez, Hildago, Garcia, and Ramsey

Gonzalez, Hildago, Garcia, and Ramsey each move to dismiss Plaintiff's claims against them because there are no facts alleging that they were personally involved in Harris' death. Doc. #42 at 6–8; Doc. #43 at 7–9; Doc. #46 at 6, 7–9. As a preliminary matter, it is not clear from the face of the Second Amended Complaint which of her two claims Plaintiff asserts against Gonzalez, Hildago, Garcia, and Ramsey because they are not explicitly named. At the conclusion of her recitation of the facts, Plaintiff asserts, "The Commissioners Court, and Sheriffs know it is extremely unlikely they will be sued in most instances and even if they are sued many litigants dismiss their cases or settle for small amounts." Doc. #31 at 12. This is the only sentence in the Second Amended Complaint that seemingly addresses Gonzalez, Hilgado, Garcia, and Ramsey's alleged actions in this case.

"Under [S]ection 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability. However, a supervisor may be liable if there exists either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins v. Belt*, 828 F.3d 298, 303–04 (5th Cir. 1987) (citations omitted). Supervisors may also be liable if they "implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Id.* at 304 (quoting *Grandstaff v. City of Borger*, 767 F.2d 161, 169–70 (5th Cir. 1985)). A constitutionally deficient policy cannot be inferred from a single wrongful act. *Id.*

Here, Plaintiff does not assert any facts alleging that Gonzalez, Hildago, Garcia, or Ramsey were personally involved in violating her constitutional rights vis-à-vis Harris' death. Nor does

Plaintiff allege that these Defendants engaged in any wrongful conduct or implemented any unconstitutional policies that were connected to the constitutional violations at issue here. Thus, the Second Amended Complaint fails to state a claim for which relief can be granted against Gonzalez, Hildago, Garcia, and Ramsey. Accordingly, the Motions to Dismiss filed by these Defendants are granted.

c. **Plaintiff's ADA Claim**

Harris County also moves to dismiss Plaintiff's ADA claim against it because she failed to plead sufficient facts to establish the elements of her failure-to-accommodate theory. Doc. #32 at 19. "To succeed on a failure-to-accommodate claim, a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015). "Plaintiffs ordinarily satisfy the knowledge element by showing that they identified their disabilities as well as the resulting limitations to a public entity or its employees and requested an accommodation in direct and specific terms." *Smith v. Harris Cnty.*, 956 F.3d 311, 317 (5th Cir. 2020). "When a plaintiff fails to request an accommodation in this manner, he can prevail only by showing that 'the disability, resulting limitation, and necessary reasonable accommodation' were 'open, obvious, and apparent' to the entity's relevant agents." *Windham v. Harris Cnty.*, 875 F.3d 229, 237 (5th Cir. 2017) (quoting *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996)).

Here, it is undisputed that Harris was a qualified individual with a disability and that Harris County was aware of Harris' intellectual and mental disabilities. However, Plaintiff does not plead sufficient facts to establish that the limitations of Harris' intellectual disabilities and mental illness were known to Harris County. While Plaintiff asserts that Harris' intake evaluation and subsequent

11

court orders made it clear that Harris was intellectually and mentally disabled, Plaintiff also notes that Harris attended and graduated from Stafford High School despite his severe intellectual handicap. Doc. #31 at 3. As such, it is not apparent from the Second Amended Complaint what specific limitations Harris' intellectual and mental disabilities had on him, and more importantly, whether Harris County was aware of said limitations. Instead, Plaintiff seems to summarily conclude that because Harris had intellectual disabilities and mental illness, of which Harris County employees learned about during Harris' intake evaluation, then Harris County is automatically liable for failing to accommodate him by placing him in a cell with Ownby. Such conclusory assertions do not meet the pleading standards required to state an ADA claim. Accordingly, Harris County's Motion to Dismiss is granted as to Plaintiff's ADA claim.

**IV.     Plaintiff's Motion for Extension of Time to Serve Summons**

On August 20, 2023, Plaintiff moved for an additional sixty days to serve the Unserved Defendants. Doc. #50. Based on the record before the Court, it does not appear that the Unserved Defendants have since been served. According to Rule 4(m) of the Federal Rules of Civil Procedure, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against the defendant or order that service be made within a specified time." FED. R. CIV. P. 4(m). Accordingly, the Court grants Plaintiff's Motion for Extension of Time to Serve Summon (Doc. #50) and orders Plaintiff to properly serve the Unserved Defendants within fourteen days of the entry of this Order. Failure to do so will result in a dismissal of Plaintiff's claims against the Unserved Defendants.

## V. Plaintiff's Motion for Leave to Amend Complaint

On September 21, 2023, Plaintiff sought leave to amend her complaint for a third time. Doc. #53. Plaintiff stated that her third amended complaint would "significantly bolster her claims with respect to the Harris County jail's policies, customs, patterns, and practices concerning violence, medical emergency response, understaffing, and lack of training, as well as the County's policymakers' subjective knowledge of those issues." *Id.* at 2. To achieve this end, Plaintiff's proposed third amended complaint details allegations in other lawsuits against Harris County that assert similar complaints as those stated here. Doc. #53, Ex. 1. However, allegations in other lawsuits are not facts specific to this case that can establish a connection between the alleged policies and customs and the constitutional violations asserted here. Accordingly, Plaintiff's Motion for Leave to Amend (Doc. #53) is denied as to her proposed third amended complaint. However, the Court will grant Plaintiff leave to amend the Second Amended Complaint to specifically address the deficiencies raised herein.

## VI. Conclusion

In conclusion, the Court finds that Plaintiff has standing in her individual capacity to sue pursuant to Section 1983, but she lacks standing to sue as the representative of Harris' estate. Accordingly, Plaintiff's claims on behalf of Harris' estate are hereby DISMISSED. Further, Plaintiff fails to plead sufficient facts to support her Section 1983 and ADA claims, therefore, Defendants' Motions to Dismiss are GRANTED (Doc. Nos. 32, 42, 43, 46), and Plaintiff's claims against Harris County, the Harris County Sheriff's Office, Sheriff Ed Gonzalez, Lina Hildago, Adrian Garcia, and Tom R. Ramsey are hereby DISMISSED WITHOUT PREJUDICE.

Plaintiff's Motion for Extension of Time to Serve Summon (Doc. #50) is GRANTED IN PART, and Plaintiff is ORDERED to properly serve the Unserved Defendants within fourteen

days of the entry of this Order. Failure to do so will result in a dismissal of Plaintiff's claims against the Unserved Defendants.

Finally, Plaintiff's Motion for Leave to Amend (Doc. #53) is DENIED as to her proposed third amended complaint, but it is GRANTED to allow Plaintiff to amend the Second Amended Complaint to address the deficiencies raised in this Order.

It is so ORDERED.

MAR 2 8 2024
Date

The Honorable Alfred H. Bennett
United States District Judge